### AUGUSTA TRUST CO. v. FEDERAL TRUST CO. et al.

#### (Circuit Court, D. Massachusetts. November 16, 1905.)

#### No. 2,028.

STREET RAILROADS—LIEN UNDER MASSACHUSETTS LAW—AGREEMENT TO ISSUE BONDS.

    A provision in notes given by a Massachusetts street railroad company, by which it agreed to issue to the holder certain of its bonds secured by a mortgage previously given as soon as a further issue of bonds thereunder should be authorized by the state railroad commissioners, whose authority was necessary before they could be legally issued, does not place the notes on an equality with the bonds previously issued, nor create an equitable lien on the mortgaged property which can be enforced by the courts, where no authority to issue the bonds was ever given by the commissioners.

In Equity.

Orville D. Baker, for complainant.

J. P. Fagan, for Federal Trust Co.

J. M. Sears, for receivers.

COLT, Circuit Judge. This petition was referred to a master, who found against the petitioner; and the case, including the master's report and the exceptions thereto, is now before the court for determination.

The petitioner is the holder of three $5,000 notes of the Middleboro, Wareham & Buzzards Bay Street Railway Company, on which upwards of $12,000 remains due. These notes matured in August and November, 1903. Each of these notes contained an agreement that, if the note was not paid at maturity, the railway company would deliver to the holder six first-mortgage bonds when authorized by the board of railroad commissioners. The bonds described in these notes were never authorized by the railroad commissioners, and consequently were never issued or delivered to the petitioner.

In November, 1901, the railway company executed a mortgage deed of trust to the Federal Trust Company, as trustee, to secure an original issue of first-mortgage bonds to the amount of $75,000, and additional bonds not exceeding $425,000, "as duly authorized by law and votes of the stockholders of the railway company."

At the time of the appointment of the receivers of the railway company in March, 1904, duly authorized bonds had been issued to the amount of $150,000. In December, 1904, under order of the court, the property and assets of the railway company were sold, subject to the lien of the actual bondholders to the amount of $150,000, and to such liens as may be decreed by the court to the petitioner and other similar noteholders.

The question presented on this petition is whether, under the agreements contained in these notes, the petitioner has the right to come in under the mortgage just as if it were the actual holder of the first-mortgage bonds described in the notes; in other words, to share in the benefits conferred by the mortgage security equally with the actual bondholders. In effect, the court is asked to enter a decree that the amount of outstanding bonds under the trust indenture is not $150,000, the amount authorized by the railroad commissioners, and now held by actual bondholders, but $150,000 plus $18,000, named in the petitioner's notes, and such additional amounts as may be named in other similar notes.

The form of the notes is as follows:

"No. 75.

"$5.000. Boston, Mass., February 5th, 1903.

"For value received, the Middleboro, Wareham & Buzzards Bay Street Railway Company incorporated under the laws of Massachusetts promises to pay to ourselves or order the sum of five thousand dollars on the fifth day of August, 1903, at the office of Federal Trust Company in the city of Boston, Mass., with interest at the rate of 6 per centum per annum.

"It is hereby certified that the issue hereof has been duly authorized by law and by the proceedings of the said company. and does not exceed any limit prescribed by law.

"The Middleboro, Wareham & Buzzards Bay Street Railway Company hereby agrees to use the proceeds of $6,000 of its first mortgage bonds Nos. 205 to 210 in payment of its note dated February 5th, 1903, payable August 5th, 1903, and in case the said note shall not be paid at maturity the said Company agrees to deliver $6,000 of its said first-mortgage bonds to the owner of the

said note as security therefor within a reasonable time after the same shall have been authorized by the Board of Railroad Commissioners. The said Company agrees not to agree to deliver first-mortgage bonds to any person or corporation in excess of $500,000 for an extension of its tracks from Buzzards Bay into the town of Falmouth, and equipment for the same.

"In witness whereof the said Middleboro, Wareham & Buzzards Bay Street Railway Company has caused this common seal to be hereto affixed and these presents to be signed in its behalf by its Treasurer thereto duly authorized.

"Middleboro, Wareham & Buzzards Bay Street Railway Company,

"Thomas F. Carey, Treas.

"[Corporation Seal.]
"Approved by
        "Edward A. Mead,
        "Chas. J. Cunningham,
                "Executive Committee.

### "Article X.

"The Directors may appoint an Executive Committee of not more than three. The duty of the Committee shall be to have full charge and control of the making and executing of all contracts for the financing and constructing and furnishing equipment for the road, and all notes or bills payable, not including bonds secured by mortgage, to be legal and binding upon the Company shall be signed by the Treasurer and approved on their face by the signature of at least two of the Executive Committee.

"Middleboro, Wareham & Buzzards Bay Street Railway Company.
"First Mortgage 5% Bonds.

"This is to certify that Note No. 75 is entitled to Six ($6,000.00) Thousand Dollars in First Mortgage 5% Bonds of the Middleboro, Wareham & Buzzards Bay Street Railway Company Bonds No. 205 to 210 secured by a Mortgage or Deed of Trust to the Federal Trust Company as Trustee, which Bonds or the sum payable by the underwriter of same is to be delivered to said holder of Note No. 75 as soon as said bonds are engraved and certified by said Trust Company and authorized by the Railroad Commissioner of Massachusetts and upon return of this certificate properly endorsed. Said bonds are to be subject to order of the Company upon fulfillment of the attached note.

"Middleboro, Wareham & Buzzards Bay Street Railway Company,

"By Thomas F. Carey, Treasurer.

"Recorded, Boston, Feb. 5, 1903.
        "Federal Trust Co.,
                "By David Bates, Treasurer."

Under the first of these agreements, in case the note was not paid at maturity, and as security therefor, the holder was to receive six first-mortgage bonds of the railway company, numbered 205, 206, 207, 208, 209, and 210, "within a reasonable time after the same shall have been authorized by the board of railroad commissioners." Under the second agreement the holder became entitled to these bonds "as soon as said bonds are engraved and certified by said trust company and authorized by the railroad commissioners of Massachusetts." It will be noticed that both the agreements, though differing somewhat in form, contain the provision that the holder of the note is entitled to the bonds specified when they are authorized by the railroad commissioners.

The meaning of this contract is perfectly plain. Under the laws of Massachusetts a street railway company cannot issue bonds without the approval of the board of railroad commissioners, whose powers and duties respecting such issues are carefully defined by statute. Rev. Laws, c. 112, §§ 20, 23; Rev. Laws, c. 111, § 63; Rev. Laws, c. 109, §§ 24, 25; Acts 1902, p. 285, c. 370, § 1. Since the railway company knew

that it was without authority to issue these bonds, it offered to its noteholders the only security it could give under the circumstances, namely, an agreement to deliver certain particular bonds when they were authorized by law. By the express terms of the contract the holder of the note was informed of the true situation. The petitioner, voluntarily and upon full information, took as security for the payment of these notes bonds which had no existence at the time, and whose future existence was dependent, not upon the action of the railway company, but upon the decision of an independent tribunal created by the commonwealth of Massachusetts for the regulation of street railway companies and in the interest of the investing public. The railway company did not pretend that it had the authority to issue these bonds, and, although the petitioner might have expected or thought that they would be authorized by the railroad commissioners, still it deliberately ran the risk that they might never be authorized. Having taken this risk, I do not see how a court of equity can relieve the petitioner from the consequences of its own voluntary and deliberate act; nor am I able to find any just ground upon which this court can now hold that the petitioner is entitled to occupy the same position under the mortgage indenture as the actual bondholders.

Assuming that, by implication, it was the duty of the railway company, under this contract, to do all in its power to secure the authorization of these bonds, that does not help the situation, or afford any ground for the equitable relief now asked for. The authorization of these bonds was not within the power of the railway company, but resided in the railroad commissioners; and, if the railway company had taken all the preliminary steps under the statute, this court has no power to determine what the action of the railroad commissioners would have been, nor to speculate as to their probable or possible action. To do this is to exercise the power which by the statutes of Massachusetts is vested exclusively in the board of railroad commissioners; it is in fact to substitute the judgment of this court for the judgment of a tribunal designated by law, as well as by the agreement of parties, to pass upon this very question.

The petitioner advances the proposition that under this trust indenture there may exist, not only legal bondholders, whose bonds have been authorized by law, but equitable bondholders under the agreements contained in these notes. For the court to accept this proposition would be to lay down the principle that a street railway company in Massachusetts may first execute a mortgage, and then, in direct violation of the state statutes, may proceed to issue bonds to the amount named in the mortgage under the form of contracts embodied in its promissory notes. This is in effect taking the control of street railways out of the hands of the state, by permitting them in this way to annul the laws which the state has passed for their proper regulation.

This contract does not create a lien of any kind upon the property of the railway company. It is a mere agreement to deliver certain specified bonds when authorized by the railroad commissioners. Until this condition is fulfilled, the holder of these notes does not acquire any right, legal or equitable, in these bonds, nor any privilege to come

in under the mortgage with the actual holders of bonds duly authorized under the laws of Massachusetts.

For these reasons, the petition must be dismissed; and a decree may be drawn accordingly.

Petition dismissed.