AUGUSTA TRUST CO. v. FEDERAL TRUST CO. et al.

(Circuit Court of Appeals, First Circuit. February 1, 1907. On Appeal from Taxation of Costs, March 27, 1907.)

No. 667.

1. STREET RAILROADS—LIEN UNDER MASSACHUSETTS LAW.

Rev. Laws Mass. 1902, c. 112, § 23, requiring a street railroad company before issuing mortgage bonds to obtain authority therefor from the state board of railroad commissioners, which may be granted only after a hearing and examination into the assets and liabilities of the company, and upon being satisfied that its property exclusive of its franchise equals or exceeds its indebtedness, embodies a rule of public policy which cannot be ignored nor overridden by the courts.

2. SAME—AGREEMENT TO ISSUE BONDS.

A provision in notes, given by a Massachusetts street railroad company, by which it agreed to issue to the holder as security certain of its bonds secured by a mortgage previously executed, as soon as a further issue of bonds thereunder should be authorized by the state railroad commissioners, whose authority was necessary before they could be legally issued under Rev. Laws Mass. 1902, c. 112, § 23, does not place the notes on an equality with bonds previously issued, nor entitle the holders to any preference over general creditors where no further issue of bonds was authorized, and the company has become insolvent and is in the course of administration, although the circumstances were such as to create an equitable lien as between the parties which the courts would enforce in the absence of the statute.

3. COSTS—SEPARATE COSTS.

Where appellees recover costs in the Circuit Court of Appeals, separate costs are taxed for the several appellees who appear separately and file separate briefs.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Costs, § 921.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Orville D. Baker (Daniel C. Stanwood, on the brief), for appellant.

Joseph P. Fagan (James C. Cotter on the brief), for appellee Federal Trust Company.

Joshua M. Sears, for appellees John T. Burnett and John L. Hall.

William M. Richardson, for appellee Massachusetts Securities Company.

Before PUTNAM and LOWELL, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. The facts are sufficiently stated in the opinion of the learned judge of the Circuit Court reported as Augusta Trust Co. v. Federal Trust Co. (C. C.) 140 Fed. 930, except that we deem it advisable for convenience to repeat here in full one of the notes.

No. 75.

$5,000. Boston, Mass., February 5, 1903.

For value received the Middleboro, Wareham and Buzzards Bay Street Railway Company, incorporated under the laws of Massachusetts, promises to pay to ourselves or order the sum of five thousand dollars on the fifth day of August, 1903, at the office of Federal Trust Company, in the city of Boston, Mass., with interest at the rate of 6 per centum per annum.

It is hereby certified that the issue hereof has been duly authorized by law and by the proceedings of the said company and does not exceed any limit prescribed by law.

The Middleboro, Wareham & Buzzards Bay Street Railway Company hereby agrees to use the proceeds of $6,000 of its first mortgage bonds Nos. 205 to 210 in payment of its note dated February 5th, 1903, payable August 5th, 1903, and in case the said note shall not be paid at maturity the said company agrees to deliver $6,000 of its said first mortgage bonds to the owner of the said note as security therefor within a reasonable time after the same shall have been authorized by the board of railroad commissioners. The said company agrees not to agree to deliver first mortgage bonds to any person or corporation in excess of $500,000 for an extension of its tracks from Buzzards Bay into the town of Falmouth, and equipment for the same.

In witness whereof the said Middleboro, Wareham & Buzzards Bay Street Railway Company has caused this common seal to be hereto affixed and these presents to be signed in its behalf by its treasurer thereto duly authorized.

Middleboro, Wareham & Buzzards Bay Street Railway Company,<br>Thomas F. Carey, Treasurer.

Approved by
    Edward A. Mead,
    Chas. S. Cummings, 2d,
       Executive Committee.

Indorsements.

| | | |
|---|---|---|
| Oct. | 3, 1903. | Received five hundred dollars. |
| Oct. | 30, 1903. | Received five hundred dollars. |
| Nov. | 6, 1903. | Received five hundred dollars. |
| Dec. | 26, 1903. | Received five hundred dollars. |
| Jan. | 4, 1904. | Received five hundred dollars. |
| 1904, | Jan. 15. | Received five hundred dollars. |

Middleboro, Wareham & Buzzards Bay Street Railway Company,<br>Thomas F. Carey, Treasurer.

    Horace B. Parker.
    Thomas F. Carey.

Article X.

The directors may appoint an executive committee of not more than three. The duty of the committee shall be to have full charge and control of the making and executing of all contracts for the financing and constructing and furnishing equipment for the road, and all notes or bills payable, not including bonds secured by mortgage, to be legal and binding upon the company shall be signed by the treasurer and approved on their face by the signature of at least two of the executive committee.

Middleboro, Wareham & Buzzards Bay Street Railway Company First<br>Mortgage 5% Bonds.

This is to certify that Note No. 75 is entitled to six (6,000) thousand dollars in first mortgage 5% bonds of the Middleboro, Wareham & Buzzards Bay Street Railway Company Bonds Nos. 205 to 210 secured by a mortgage or deed of trust to the Federal Trust Company as trustee, which bonds, or the sum payable by the underwriter of same, is to be delivered to said holder of Note No. 75 as soon as said bonds are engraved and certified by said trust company and authorized by the railroad commissioners of Massachusetts and upon return of this certificate properly indorsed. Said bonds are to be subject to order of the company upon fulfillment of the attached note.

Middleboro, Wareham & Buzzards Bay Street Railway Company,<br>By Thomas F. Carey, Treasurer.

Recorded, Boston, Feb. 5, 1903.
    Federal Trust Co., by David Bates, Treasurer.

We also reiterate the fact that the moneys advanced upon the notes in question were bona fide used in the construction of the railway of the corporation whose obligations are involved here. We also desire to call attention to the fact that the mortgage under which the complainant claims rights in this proceeding expressly provided that the bonds secured thereby might be used, not only for furnishing means of construction and equipment, but "for funding the floating debt"

"that has been incurred for construction," etc. Therefore, by the very terms of the mortgage, it was lawful, so far as the corporation itself and the mortgage were concerned, to issue bonds as stipulated in the notes given the complainant, and the holders of the bonds which have in fact been issued according to the terms of the mortgage had lawful notice thereof; so that, so far as they are concerned, and the corporation also, there is, aside from the statutes hereinafter referred to, no equity prohibiting the relief which the complainant seeks.

We also desire to call attention to the fact that, although bonds to the amount of only $150,000 had been issued under the mortgage, the mortgage provided for additional bonds, completing the entire sum of $500,000, and those additional bonds were identified in advance by serial numbers, as to which the note which we have copied refers specifically to bonds numbered 205 to 210, each inclusive; and the other notes involved in this litigation likewise refer in the same way to other bonds contemplated by the mortgage according to specified serial numbers.

It will be observed that the body of each note pledges the bonds named in it, or the proceeds thereof, to its payment, with the additional provision that, in case the note is not paid at maturity, the corporation agrees to deliver $6,000 of its first mortgage bonds to the owner of the note as security therefor within a reasonable time after the same shall have been authorized by the board of railroad commissioners. While this does not in terms require the delivery of the precise bonds named in the note, nevertheless it cannot be questioned that, if, at the time this bill was filed, the bonds so named had not been disposed of, as in fact they had not been, they were pointed out as the bonds as to which the holder of the note might claim a specific right. The certificate on the note departs somewhat from the terms of the note itself, in that it provides that the bonds named, or what might be received therefor, should be delivered to the holder as soon as they were engraved and certified, without any stipulation for delay until the note came due. Therefore, on the whole, putting together the note and the certificate, it is plain that the holder had an option to demand that the specific bonds named should be delivered to him as soon as issued, or the proceeds thereof paid to him, thus putting it beyond doubt that the holder was entitled to a lien on those specific bonds, or the proceeds thereof. Thus the property as to which the lien was contemplated was specifically identified.

In view of the facts stated by the learned judge of the Circuit Court, in connection with those to which we have referred, it is difficult to perceive any stronger equity than that raised on this appeal in behalf of the complainant. Here we have a stipulation that certain funds should be advanced in the construction of the railway of the corporation involved, and that, as soon as the details of the issuing of the mortgage bonds could be worked out, specific bonds, or the proceeds thereof, should be delivered to the holders of the notes given for the advances, either as collateral or payment, as the case might be. Under the circumstances, the complainant claims, first, that it is entitled to be, admitted to share pro rata with the holders of the $150,000 of bonds of which we have spoken; or, second, that in the distribution of any surplus proceeds of the property of the corporation in question, not re-

quired to satisfy such $150,000 of bonds, the complainant should have priority over the general creditors. Independently of the peculiar circumstances to which we will refer, what difficulty stands in the way of the complainant's first proposition? With regard to all liens of this character, equity proceeds on very broad principles to give effect to what has been fairly agreed to be done, so far as it can accomplish a result without injustice to others than the parties directly concerned. We have shown that, by the terms of this mortgage, which gave full notice to the holders of the outstanding bonds, no such injustice can be done. We have also shown that the equities of the case are supported by the fact that the funds of the complainant went into the property, under the express agreement that it should share in the security thus created by the use of what was thus advanced.

An illustration of the extent to which equity goes in this direction is the fact that, while it is often held that mortgages of after-acquired property are not valid in law, they are generally held to be valid in equity, provided the property is sufficiently pointed out and afterwards comes into existence under the terms of the intended security. The general rule in this respect has been stated often by the Supreme Court, although applied specifically to mortgages covering railroad supplies and rolling stock, which, in a certain sense, are incidental to the franchise of the corporation. Pennock v. Coe, 23 How. (U. S.) 117, 127, 16 L. Ed. 436; Irrigation Company v. Garland, 164 U. S. 1, 15, 17 Sup. Ct. 7, 41 L. Ed. 327. Jones on Chattel Mortgages (4th Ed. 1894), 202, 203, lays down like broad propositions as the settled American doctrine; and it cites decisions of the Circuit Courts which have long been accepted as of very high authority, establishing this as the rule of federal tribunals, although we think the Supreme Court has never in fact applied it except to the incidental property of railway corporations. It must also be admitted that, where there is an incomplete attempt to give security on existing property, equity will give relief. Fry on Specific Performance (4th Ed. 1903) p. 22, states the rule unqualifiedly and positively as follows:

"Again, the court will specifically enforce a contract to execute a mortgage, and that even with an immediate power of sale, where the money has been actually advanced either before or at the time of the contract."

The author adds that specific performance will not be granted where the money has not been advanced in fact, neither to enforce an agreement for such an advance. This is undoubtedly the general rule, although possibly it would not apply to some exceptional cases, like those of quasi corporations which have agreed to furnish aid towards public utilities already initiated. However, that particular topic does not concern this case. The rule of so much of the text as we have cited was applied unhesitatingly by Vice Chancellor Wickens, in 1871, in Ashton v. Coryton, L. R. 13 Eq. 76, and by Lord Chancellor Selborne, in 1872, in Hermann v. Hodges, L. R. 16 Eq. 18; and the principle involved was made use of, with a thorough discussion and favorable observations, under circumstances substantially the same as those at bar in Walker v. Brown, 165 U. S. 653, 654, 656, 17 Sup. Ct. 453, 41 L. Ed. 865.

Therefore, it may be that there would be no difficulty in sustaining the complainant's bill except for a peculiar obstacle which seems in-

superable. The opinion of the learned judge of the Circuit Court observes that under the laws of Massachusetts this corporation could not issue bonds without the approval of the board of railroad commissioners, and makes reference to sundry statutes, of which we need cite only section 23 of chapter 112 of the Revised Laws of 1902. The opinion also observes as follows:

"The petitioner advances the proposition that under this trust indenture there may exist, not only legal bondholders, whose bonds have been authorized by law, but equitable bondholders under the agreements contained in these notes. For the court to accept this proposition would be to lay down the principle that a street railway company in Massachusetts may first execute a mortgage, and then, in direct violation of the state statutes, may proceed to issue bonds to the amount named in the mortgage under the form of contracts embodied in its promissory notes. This is in effect taking the control of street railways out of the hands of the state, by permitting them in this way to annul the laws which the state has passed for their proper regulation."

We are forced to agree with these observations, and they seem to leave us nothing except to affirm the judgment of the Circuit Court. What is involved in the line of statutes concerning this matter is a deep-seated, clearly implied, public policy, intended to protect the community, and incidentally both secured and unsecured creditors. The statute which we have named requires that no bond be issued except, of course, by a vote of a majority in interest of the stockholders of the corporation, which condition, perhaps, is sufficiently covered in this record. Nor can they be issued until the board of railroad commissioners is satisfied that 'the value of the property of the corporation, "excluding the value of the franchise, * * * taken at a fair value for railway purposes, * * * equals or exceeds the amount of the capital stock outstanding and the debt"; nor until the board, "after an examination of the assets and liabilities of the company, and such further investigation as it considers expedient, shall by vote approve their issue."

Proceedings under the line of statutes to which the section quoted relates have never been merely formal, but, according to the practice, they are not completed until after due notice, public hearing, and a solemn adjudication. Indeed, this section requires a formal vote by the board, to be passed "after an examination of the assets and liabilities of the company, and such further investigation as it," that is, the board, "considers expedient." All this emphasizes the fact that this legislation is in line with a deep-seated public policy, which, inasmuch as the corporation involved is purely local, we could not in any way disregard with reference to either a formal or an equitable mortgage, or to any attempt to authorize the complainant to share with the holders of the bonds already issued, or even to protect it by a lien on the property in excess of their claims. Any attempt in either direction would be equally violative of the local statutes appertaining hereto.

It is true that it is settled that a court proceeding in bankruptcy, or for the purpose of winding up insolvent estates in any method, may lay hold of the value of seats in stock exchanges, notwithstanding transfers of them require the approval of the officers of the exchanges. Such a condition, however, involves no rule of public policy. It is also true that, in Fisher v. Cushman, 103 Fed. 860, 43 C. C. A. 381, 51

153 F.—11

L. R. A. 292, decided by us on June 15, 1900, we authorized the court in bankruptcy to lay hold of the proceeds of a license for the sale of intoxicating liquors, issued in accordance with the statutes of Massachusetts, notwithstanding the same could be transferred only by authority of the commissioners. It appeared, however, in that case that the commissioners were accustomed to grant authority for such transfers, unless there was some special reason to the contrary, and that in that way licenses had proved of substantial value, yielding sometimes from $4,000 to $5,000. However, we made no attempt to avoid the statutes of the state, because a transfer had been lawfully approved, and we dealt only with the proceeds thereof. Therefore, such classes of cases are of no assistance here.

It is also true that, if the corporation involved here were still an active one, we might, on a bill in equity framed therefor, but otherwise like that at bar, compel it to apply to the board for authority to issue the bonds asked for. But this corporation went into the hands of a receiver before this bill was filed; and there is no allegation that the circumstances are such as would call upon the commissioners to authorize any further lien, because there is no allegation that the property of the corporation would, as required by the statute we have cited, at a fair value for railway purposes, equal or exceed the amount of the outstanding capital stock and debt. On the other hand, the whole case is based on the hypothesis that the corporation is insolvent, without sufficient assets to pay its creditors, much less to divide anything to its stockholders. It is defunct and powerless, and incapable of acting under orders from a court sitting in equity, or of receiving the recognition of the board of railroad commissioners for any purposes involved in this litigation. On the whole, we find no method by which the difficulty stated by the learned judge of the Circuit Court can be overcome.

The decree of the Circuit Court is affirmed, and the appellees recover their costs of appeal.

LOWELL, Circuit Judge, concurs in the result.

On Appeal from Clerk's Taxation of Separate Costs for the Several Appellees Who Appeared Separately and Filed Separate Briefs.

PER CURIAM. In this case the clerk taxed separate bills of costs for each of the several parties appearing as appellees, and an appeal was taken to us, claiming that only one bill should be taxed. By analogy to the implication of equity rule 62,[1] the taxation by the clerk must be sustained.

The appeal is dismissed.

[1] Equity Rule 62.—When the same solicitor is employed for two or more defendants, and separate answers shall be filed, or other proceedings had, by two or more of the defendants separately, costs shall not be allowed for such separate answers, or other proceedings, unless a master, upon reference to him, shall certify that such separate answers and other proceedings were necessary or proper, and ought not to have been joined together.