FEDERAL TRUST COMPANY *vs.* BRISTOL COUNTY STREET RAILWAY COMPANY & another.

Suffolk.  March 26, 27, 1914. — June 17, 1914.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & CROSBY, JJ.

</div>

*Equity Jurisdiction*, To foreclose mortgage of property of street railway company.  *Street Railway.  Superior Court.  Statute*, Construction.  *Mortgage. Receiver.  Estoppel.  Tax*, Sale.  *Bristol County Street Railway Company. Taunton and Pawtucket Street Railway Company.*

The omission, in the codification of the railroad and street railway laws in St. 1906, c. 463, of the reference in R. L. c. 112, § 24, to c. 111, § 70, by which the Supreme Judicial Court was given exclusive jurisdiction of all questions

arising out of street railway mortgages, is significant of a legislative purpose to change the law; and, since such codification, the court of appropriate jurisdiction of a suit to foreclose a trust mortgage upon the property of a street railway company is to be determined apart from any express statute.

The Superior Court has jurisdiction of a suit in equity to foreclose a trust mortgage upon the property of a street railway company in this Commonwealth.

In a suit in equity for the foreclosure of a trust mortgage upon the property of a Massachusetts street railway company, the following facts appeared: The trust mortgage was made in January, 1901, after proceedings in compliance with statutory requirements and approval where necessary by the railroad commissioners for the subscription and full payment in cash at par for all capital stock, the issuance of the stock, and the execution and delivery of the mortgage. Eight months later, by a supplemental agreement, bonds of a slightly different tenor, but for the same debt and secured by the same mortgage, were substituted for those previously issued and $200,000 worth of them were sold to *bona fide* purchasers, the money received from the sale being used in the construction and equipment of the street railway. In a suit in the United States Circuit Court receivers of the property of the street railway company were appointed and, after due proceedings, a decree was made in that court that such property should be sold and conveyed to a purchaser or purchasers at a public auction and should be accepted by him or them subject to the mortgage, which was carefully described. The receivers acted in accordance with the decree, referring to the mortgage in their notices, advertisements and deed. Purchasers at the sale organized a new street railway corporation for the purpose of holding, owning and operating the street railway thus purchased and then conveyed to the new corporation the property they had received from the receivers, referring to the deed of the receivers. *Held*, that the new corporation was estopped to deny the validity of the mortgage on the ground that there were fatal defects in the organization of the original company.

In the above suit it *also was held*, that, because of the explicit nature of the decree as to the mortgage, a provision in the decree of the United States Circuit Court, in substance that the sale should be subject, not only to the mortgage in question, but also to other ordinary liens, and that the purchaser should have the right to contest the establishment of such liens, could not be construed as giving to the new company a right, after the sale and conveyance to it under the circumstances above described, to contest the validity of the mortgage.

It *also was held*, that the issuing of the new bonds in substitution for those originally issued did not invalidate the mortgage.

Where a mortgagee under a trust mortgage of property of a street railway company purchased a tax title of certain land of the company and conveyed it to a receiver duly appointed of the property of the company, reserving "all other interests thereon now on record in" his name, and the receiver conveys all of the property of the company by a deed stating that the conveyance is subject to the mortgage, a title in the land free from the mortgage does not pass to the purchaser from the receiver, because the receiver stood in the place of the company.

BILL IN EQUITY, filed in the Superior Court on June 21, 1909, for the foreclosure of a trust mortgage on street railway property formerly owned by the defendant Bristol County Street

Railway Company and later conveyed by receivers of that company to persons who conveyed it to the defendant Taunton and Pawtucket Street Railway Company, as stated in the opinion.

The suit was referred to Thomas W. Proctor, Esquire, as master. After the filing of his report, the Taunton and Pawtucket Street Railway Company moved for a recommittal of the report to the master, and filed objections and exceptions to the report. After a hearing by *Pierce,* J., an interlocutory decree was made denying the motion to recommit the report and overruling the exceptions to the report and confirming the report, and thereafter the same defendant moved to dismiss the suit on the ground that the Superior Court had no jurisdiction of it. The motion was heard and denied by *Pierce,* J., who thereupon reserved and reported the case for determination by this court.

The material facts are stated in the opinion.

*C. F. Choate, Jr.,* (*J. W. Burke* with him,) for the defendant Taunton and Pawtucket Street Railway Company.

*J. E. Cotter & J. P. Fagan,* for the plaintiff.

RUGG, C. J. This is a bill in equity brought in the Superior Court for the foreclosure of a trust mortgage upon a street railway property, securing an issue of $200,000 of the bonds of the Bristol County Street Railway Company.

The defendants attack the jurisdiction of the Superior Court, and assert that a proceeding like the present can be brought in the Supreme Judicial Court alone. Jurisdiction to foreclose a mortgage upon a railroad from the first until now has been vested exclusively in the Supreme Judicial Court. St. 1857, c. 178, § 5. Gen. Sts. c. 63, § 128. Pub. Sts. c. 112, § 70. R. L. c. 111, § 70. St. 1906, c. 463, Part II, § 55. The earliest general law authorizing street railway companies to issue mortgage bonds was St. 1889, c. 316. Section 3 of this act vested jurisdiction as to foreclosure in the Supreme Judicial Court by reference to Pub. Sts. c. 112, § 70, and this reference was continued by R. L. c. 112, § 24. But this latter section disappeared when the railroad and street railway laws were codified in St. 1906, c. 463. This is significant of a legislative purpose to change the law when the subject theretofore had been embodied in a separate section. The "issue of bonds" is governed in some detail by § 103 of Part III of that act, but nothing is said about the foreclosure of

the mortgage by which they are secured.  There is in this section an inclusive reference to § 55 of Part II, but this reference in the connection in which it occurs does not quite outweigh the inference that arises from the entire and unexplained omission of a whole section which previously had governed the jurisdictional aspects of a mortgage foreclosure.  Therefore, we incline to the view, though with some hesitation, that the court of appropriate jurisdiction is to be determined apart from any express statute. The Superior Court has general jurisdiction in equity.  R. L. c. 159, § 1.  The foreclosure of a trust mortgage of this nature falls under equitable jurisprudence.  *Old Colony Trust Co.* v. *Great White Spirit Co.* 178 Mass. 92.  Hence the present bill was within the jurisdiction of the Superior Court.

The defendants deny the plaintiff's right to any relief by assailing the validity of the mortgage under which the plaintiff asserts all its rights.  The material facts in brief are that the Bristol County Street Railway Company was organized as a street railway corporation under general law and received its charter from the secretary of the Commonwealth.  It is not and could not well be contended that it did not become a corporation.  At all events it would not be possible for the Taunton and Pawtucket Street Railway Company to contest this point, because its only rights in the premises arise from a sale of the franchises and physical assets of the Bristol County Street Railway Company made by the receivers of that company appointed and acting by direction of the United States Circuit Court.  Proceedings, in compliance with the terms of the statutes, so far as form is concerned, and where necessary approved by the board of railroad commissioners, were had for the subscription, full payment in cash at par for all the capital stock, the issuance of the capital stock, and for authorizing the execution and delivery of the trust mortgage now sought to be foreclosed.

The trust mortgage was made under date of January 25, 1901, to secure a maximum issue of bonds of $250,000, but in no event to exceed $175,000 without consent of holders of all outstanding bonds.  Bonds to the amount of $120,000 were issued at this time.  On August 20, 1901, an agreement was made between the plaintiff as mortgagee and the Bristol County Street Railway Company supplemental to the trust mortgage, reciting that it

was the desire of the parties in interest to surrender the bonds previously issued and receive in lieu thereof, but for the same debt, other bonds of like amount omitting a provision for call for payment before maturity and extending the limit for further bonds to $250,000 without reservation and for the total issue of $200,000 of such bonds. These bonds were sold in the market at or near par, and now all are held by *bona fide* purchasers for value, ignorant of any irregularity in their issue, and the money received therefrom was used in the initial construction and equipment of the street railway. After it was in operation, receivers of its property were appointed by the United States Circuit Court.

After due proceedings were had, a sale of the "property, locations, franchises and assets" of the Bristol County Street Railway Company was authorized by a decree which contained among other provisions the following: that the same "shall be sold and shall be conveyed to the purchaser or purchasers and shall be accepted by the purchaser or purchasers, subject to the first mortgage dated the 25th day of January, 1901, given by the Bristol County Street Railway Company to the Federal Trust Company of Boston, trustee, to secure an authorized issue of two hundred and fifty thousand dollars ($250,000) five per cent first mortgage bonds of which two hundred thousand dollars ($200,000) have been issued and are now outstanding, and accrued interest thereon from July, 1904, to the date of the sale and expenses, disbursements and fees of said trustee under said mortgage as provided in said mortgage;" and which 'required the receivers to execute proper deeds of the property so to be sold, "subject, however, to the aforesaid mortgage given by the Bristol County Street Railway Company to the Federal Trust Company as Trustee, and accrued interest thereon, and expenses, disbursements and fees of the trustee under said mortgage as provided in said mortgage." The advertisement of sale described the property and, following the decree, stated that the property would be sold subject to the mortgage. The receivers' report of sale declared that the sale had been made "in pursuance of said decree and of said advertisements." The receivers' petition to confirm the sale further averred that the sale had been made pursuant to the decree and "subject to the mortgage . . . in said decree referred to." The deed of sale executed by the receivers pursuant.

to the decree stated in express terms that the property was conveyed "subject to the provisions in the decree of sale."

The receivers' sale was made on December 17, 1904, to three individuals, and a deed therefor was executed under date of February 10, 1905. Two of the three purchasers with their associates to the number in all of fifteen, in compliance with R. L. c. 112, § 13, filed in the office of the secretary of the Commonwealth their agreement of association. On December 22, 1904, with the intention as therein stated, "'of forming a corporation' to be called Taunton & Pawtucket Street Railway Company, 'for the purpose of holding, owning and operating the street railway of the Bristol County Street Railway Company' theretofore 'purchased by certain of the subscribers at a sale by the receivers of said Bristol County Street Railway Company . . . under a decree of the Circuit Court of the United States.'" The other provisions of the statute being complied with, the Taunton and Pawtucket Street Railway Company was organized as provided by law, and the purchasers at the receivers' sale conveyed the property to it by deed, referring for description to the receivers' deed to them. Thereby, by virtue of § 12, it held and possessed all the rights, franchises and property "with the same rights and privileges and subject to the same duties and liabilities as the original street railway company," that is, the Bristol County Street Railway Company.

This new company now assails the trust mortgage as invalid, and seeks to relieve itself and its property from liability under it, because, as it says, there were fatal defects in the organization of the original company not appearing on any public record but disclosed by investigation of its internal affairs, in that cash was not paid for its capital stock as required by law, and that stock thus issued without being paid for voted to issue the mortgage, and that divers certificates filed as a prerequisite to approval by the railroad commissioners of essential steps in the organization of the company in fact were false.

Under the facts thus disclosed the Taunton and Pawtucket Street Railway Company is estopped to deny the validity of the mortgage. The exact point to be decided is, what was sold and what was bought under the receivers' sale. The decree of the United States Circuit Court was explicit as to that which was ordered

to be sold.  Its language hardly could have been made more unequivocal or unmistakable in its terms.  The property of the old railway is described in comprehensive words.  Then follows the definite direction that the sale and conveyance shall be made by the receivers and accepted by the purchasers subject to the mortgage, which .is identified not only by date but by a detailed definition of the extent of the obligations created thereby.  It would have been competent in the receivership proceedings for any unsecured creditor to have attacked the mortgage and tried to get it set aside.  It does not appear whether that was done.

However that may be, not only did the decree for sale make the property subject to the mortgage in question, but provided further that it should be sold subject to other outstanding liens, and gave to the purchaser the right to contest the establishment of any such other liens.  The Taunton and Pawtucket Street Railway Company contends that this clause goes far enough to permit it to contest even the legality of the mortgage.  But this position is untenable.  The decree by its language draws a clear distinction between the mortgage and the other liens.  While it expressly permits the purchaser to dispute the other liens, it makes no such provision touching the mortgage.  The provisions of the statute authorizing the organization of a new company to take over the property of the old one in the hands of the receivers render it highly reasonable to continue uninterrupted any outstanding mortgage.  The conclusion is irresistible as matter of interpretation of the decree, in the light of all attendant conditions, that the validity of the mortgage was established at least to the extent of sealing the lips of the purchaser against questioning it.  There well may have been reasons obtaining during the receivership which made such provision for the interests of all the parties.  The language of the decree with its precise and ample recitals that the purchase shall be subject to the mortgage of the plaintiff discloses a purpose that its validity shall not be attacked by the purchaser or those claiming under the purchaser.  The price obtained by the receivers was based upon the assumption that the purchaser would be obliged to pay, or assume the obligation to pay, so far as secured by the property, the sum of this mortgage, and the cash passing to the receivers was diminished by that

amount. The thing which was conveyed by the receivers was in substance the equity above the mortgage.

The position of the new company does not commend itself to a court of equity, and its contentions would not be sustained unless required by the law. The money furnished by the bondholders was used in the construction of the railway. The statutes of the Commonwealth make full provision for a supervision by the railroad commissioners of the issue of all stocks and bonds and the keeping of careful records. The right of the original company to issue these bonds on the face of the records was perfect. Careful scrutiny of all the public records, which cover every material step in the incorporation, capitalization and bonding of the street railway, reveals no flaw in the title acquired by the plaintiff as mortgagee. The validity of the mortgage was recognized in the decree for receivers' sale and their deed was made subject expressly to the mortgage. The conveyance by the purchasers at the receivers' sale to the Taunton and Pawtucket Street Railway Company was of the same property conveyed to them by the receivers. Hence it can stand no better than their grantors, who took "subject to the provisions in the decree of sale." See *Kelley* v. *Newburyport & Amesbury Horse Railroad,* 141 Mass. 496; *Day* v. *Worcester, Nashua, & Rochester Railroad,* 151 Mass. 302.

It was said in *Johnson* v. *Thompson,* 129 Mass. 398, at page 400, "It is a settled principle of law that a grantee is estopped to deny the validity of any mortgage to which his deed recites that the conveyance to him is subject. *Tuite* v. *Stevens,* 98 Mass. 305. *Howard* v. *Chase,* 104 Mass. 249." Numerous other authorities support this proposition. *Pecker* v. *Silsby,* 123 Mass. 108. *Swann* v. *Wright,* 110 U. S. 590. *American Water Works Co.* v. *Farmers' Loan & Trust Co.* 20 C. C. A. 133; *S. C.* 163 U. S. 675. *Freeman* v. *Auld,* 44 N. Y. 50. *Home Trust Co.* v. *Bauchens,* 151 App. Div. (N. Y.) 416. *Weed Sewing Machine Co.* v. *Emerson,* 115 Mass. 554, is distinguishable in that, as there was said, "The description of the premises . . . as subject to this mortgage, and the exception of the mortgage out of his covenants in that deed, were for the purpose of protecting him from liability upon his covenants." *Hackensack Water Co.* v. *DeKay,* 9 Stew. 548, especially relied on by the defendant, is distinguishable in that there the officer making the conveyance undertook to go beyond

his authority in subjecting the property to an incumbrance, while here the receivers followed exactly the decree of a court of ample jurisdiction.  In *Commonwealth* v. *Smith,* 10 Allen, 448, the bonds were held void because the corporation was forbidden by law to issue bonds.  In the case at bar there was ample authority in law for the issuance of the bonds, and the only invalidity urged is the faithlessness and perfidy of the officers of the first corporation in making false returns to public boards and in failing to make and requiring to be made payments for capital stock.

The supplemental agreement of August, 1901, whereby new bonds of slightly different tenor were substituted for those issued in January of that year, but for the same debt and secured by the same mortgage and bearing the same date, did not invalidate the mortgage and its security.  The new company is also estopped by the terms of the decree for the receivers' sale from raising now any question as to whatever irregularity there may have been respecting the transaction if any there was.

What has been said disposes of most of the material issues raised on the record.  A few subsidiary matters remain to be mentioned.

The finding of the master that the original corporation did not principally transact its business at Boston is conclusive since the evidence is not reported.  It appears to have been right upon the facts reported.  See *Collector of Taxes of Boston* v. *Mount Auburn Cemetery,* 217 Mass. 286.  Hence it was not necessary that the mortgage should be recorded in Boston.

The Federal Trust Company was purchaser of certain land belonging to the original company by a tax deed from the tax collector of Attleborough, and it released to the receivers its rights thereunder, reserving "all other interests thereon now on record in its name."  This was not a conveyance of a tax title to an independent third person.  The receivers were acting for the original company.  Manifestly a title adversary to the mortgagee was not conveyed by this release.  Moreover, no evidence was introduced to show that the things necessary to the validity of the tax deed had been done.  *Burke* v. *Burke,* 170 Mass. 499.  *Conners* v. *Lowell,* 209 Mass. 111.  *Weld* v. *Clarke,* 209 Mass. 9.  It does not appear that St. 1911, c. 370, was applicable under all the circumstances.

This disposes of all objections to the master's report which

now are material. The interlocutory decree denying the motion to recommit the report to the master, overruling the exceptions to the master's report, and confirming the master's report, is to be affirmed. Decree is to be entered denying the motion to dismiss the bill for want of jurisdiction, and establishing the plaintiff's mortgage as supplemented and amended as a valid first mortgage lien for the benefit of the holders of the $200,000 of bonds, and ordering foreclosure. The details are to be settled. in the Superior Court.

*So ordered.*