FEDERAL TRUST COMPANY *vs.* BRISTOL COUNTY STREET RAILWAY COMPANY & another.

Suffolk.   March 22, 1915. — October 6, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Mortgage,* Of property and franchises of street railway corporation. *Estoppel. Taunton and Pawtucket Street Railway Company. Railroad Commissioners. Deed. Equity Jurisdiction,* To enforce covenant of further assurance. *Street Railway. Receiver. Jurisdiction.*

Taking part in negotiations, for the purpose of obtaining from the trustee under the mortgage securing the bonds of the Bristol County Street Railway Company a release of certain property from that mortgage, did not estop the Taunton and Pawtucket Street Railway Company, which had acquired the property

and franchises of the first named corporation, from impeaching the validity of a supplemental indenture to the same trustee purporting to add additional security to the bonds; nor did the payment of interest coupons of the bonds by the Taunton and Pawtucket Street Railway Company estop that company from denying the validity of such supplemental indenture.

"Avoidance of dispute on a comparatively small matter by apparent yielding does not necessarily estop one from asserting his rights when the main question comes to an issue." By RUGG, C. J.

Where, in a mortgage made by a street railway corporation to a trustee to secure its bonds, the corporation covenanted to execute any further deed that the trustee reasonably might require for "more perfectly assuring to and to the use of the trustee . . . the mortgaged premises thereby conveyed or intended so to be and especially for vesting in the trustee upon and for the said trusts and purposes all property thereafter acquired," and thereafter the corporation makes a supplemental mortgage conveying to the trustee subject to the trusts of the principal mortgage all property acquired by it between the date when the principal mortgage took effect and the date of such supplemental mortgage, the supplemental mortgage is not a subsequently executed mortgage within the meaning of Pub. Sts. c. 112, § 64, St. 1889, c. 316, § 3, (now St. 1906, c. 463, Part II, § 50, Part III, § 103,) requiring that a street railway corporation shall not subsequently execute a mortgage upon its franchise and property without including in and securing by such mortgage all bonds previously issued and all its pre-existing debts and liabilities.

In a suit in equity to foreclose a trust mortgage securing an issue of $200,000 of bonds made by the Bristol County Street Railway Company, it was *held*, that the Taunton and Pawtucket Street Railway Company, which had purchased the property and franchises of the first named company from a receiver of its property under a decree of court, was estopped from contending that the issue of bonds secured by the mortgage was invalid as being issued in violation of St. 1897, c. 337, § 2, (now St. 1906, c. 463, Part III, § 108, as amended by St. 1914, c. 671,) prohibiting the issue of bonds in excess of the amount of capital stock paid in, for the reasons stated in the decision of this court reported in 218 Mass. 367, and because, by the express terms of the deed to the purchasing company and of the decree authorizing the sale to it, the property purchased was made subject to the mortgage securing bonds to the amount of $200,000.

As to how far and by whom the validity of bonds issued by a street railway corporation in accordance with orders of authorization made by the board of railroad commissioners is open to question, it here was not necessary to determine, because the raising of the question was precluded by reason of estoppel.

A mortgage made by a street railway corporation to a trustee to secure an issue of its bonds and containing the ordinary covenants of warranty conveys as between the parties all the real estate specifically described therein or incorporated by reference in the description which was owned by the corporation when the mortgage took effect or afterwards was acquired by it, this being in accordance with the settled law in this Commonwealth as to all deeds, but, in this Commonwealth, where such a mortgage by its terms includes after acquired personal property, such property does not become subject to the mortgage either at law or in equity until the trustee takes possession of it by virtue of the power conferred by the mortgage or it is conveyed to the trustee by a supplemental instrument in writing.

A mortgage made by a street railway corporation to a trustee to secure an issue of its bonds, which was delivered and recorded ten days after its date, was *held* to have taken effect on the day of its delivery and registration, the written date not being conclusive.

In a suit to foreclose a mortgage made by a street railway corporation to a trustee to secure an issue of its bonds, the release by the trustee, to a purchaser of the property of the corporation from a receiver, of a tax title upon a certain parcel of land of the corporation was *held* not to have released the parcel of land from the lien of the mortgage but to have released only the rights of the trustee that were acquired under a certain tax deed.

In a suit to foreclose a mortgage made by a street railway corporation to a trustee to secure an issue of its bonds, where the defendant in interest had purchased the property and franchises of the corporation that made the mortgage and the bonds from a receiver appointed by the Circuit Court of the United States and the decree of sale made by that court provided that the land and other real estate rights "shall be conveyed to the purchaser or purchasers and shall be accepted by the purchaser or purchasers subject to" the mortgage that was being foreclosed, it was *held* that the defendant in interest was estopped to deny that the land and other real estate rights had passed under the lien of the mortgage.

*Whether* an express approval by the board of railroad commissioners, in their approval of an issue of bonds by a street railway corporation, of the inclusion by the mortgage of after acquired property, could have the same effect as an approval by an act of the Legislature of a mortgage providing for such inclusion, such as existed in the case of *Howe* v. *Freeman*, 14 Gray, 566, it here was not necessary to consider, because the approval of the railroad commissioners, which related only to the amount of bonds to be issued and not to the form of the mortgage by which they were secured, made no reference to after acquired property.

Where a mortgage made by a street railway corporation to a trustee to secure an issue of its bonds provided for the execution of any further deed that should be required by the trustee for vesting in the trustee all after acquired property to be held upon the trusts of the mortgage, and a supplemental mortgage was executed conveying to the trustee all property of the corporation acquired after the principal mortgage took effect up to the date of the supplemental mortgage, but after that date the trustee did not take possession of any further property by the power conferred by the mortgage and no further written instrument was executed, it was *held*, that the mortgage and the supplemental mortgage did not cover personal property acquired after the date of the supplemental mortgage.

In a suit to foreclose a mortgage made by a street railway corporation to a trustee to secure an issue of its bonds, where the defendant in interest had purchased the property and franchises of the corporation that made the mortgage and the bonds from a receiver appointed by the Circuit Court of the United States and the decree of sale made by that court declared what property was subject to the mortgage and what was not, this determination made by a court of competent jurisdiction was *held* to be conclusive upon the parties to that suit and their privies, which included the defendant in interest in the suit to foreclose the mortgage.

A mortgage made by a street railway corporation of its property and franchises to secure an issue of its bonds includes the interest of the corporation in property which, at the time the mortgage was made, it held in possession as the purchaser under contracts of conditional sale.

A covenant of further assurance made by a street railway corporation in a mortgage of its property and franchises to a trustee to secure an issue of bonds, whereby the corporation covenants to do any act and execute any deed demanded by the trustee for more perfectly assuring to the trustee all parts of the mortgaged premises intended to be conveyed, cannot be enforced, in a suit in equity to foreclose the mortgage, by an order of performance against the corporation, if before the suit was brought all the property and franchises of the corporation had been·sold by a receiver under a decree of the Circuit Court of the United States to a new corporation, which bought the property subject to the mortgage. Nor can the covenant be enforced against such purchaser, because the sale of the property subject to the mortgage merely meant that the purchaser took the property with all the infirmities that had come into existence and attached to it and did not impose an obligation to perform contractual duties of the mortgagor.

In the case above stated it further was *said* that an order to the purchasing corporation to perform such a covenant of the mortgagor would be contrary to St. 1900, c. 381, § 2, (now St. 1906, c. 463, Part III, § 144).

In the same case it was *held*, that the trustee under the mortgage, in the suit in equity to foreclose the mortgage, was not entitled to have the receiver ordered to take possession of after acquired property of the mortgagor for the purpose of subjecting it to the lien of the mortgage, because by the appointment of the receiver by the Circuit Court of the United States the rights of general creditors had intervened, and the trustee under the mortgage had in this respect only the rights reserved to it by the decree of the Circuit Court.

In a suit to foreclose a mortgage made by a street railway corporation to a trustee to secure an issue of its bonds, it had been assumed by the parties and the trial judge that the open and closed cars of the corporation were personal property, and this assumption was assumed by this court to be right, without deciding it to be so.

A decree of the Circuit Court of the United States ordering a sale, by a receiver who had been appointed by that court, of the property and franchises of a street railway corporation, subject to a certain mortgage that had been made by the corporation to a trustee to secure an issue of its bonds, and declaring that the purchaser of the property and franchises of the corporation at a foreclosure sale under that mortgage should be "entitled to appear, resist, and take evidence" in regard to liens and priorities, does not retain for the Circuit Court of the United States exclusive jurisdiction of the case for determining all claims for priority of payment and of lien upon the property sold by the receiver, and is not a bar to a suit in equity in the Superior Court of this Commonwealth to foreclose the mortgage subject to which the sale by the receiver was ordered to be made.

BILL IN EQUITY, filed in the Superior Court on June 21, 1909, to foreclose a trust mortgage made to the plaintiff securing an issue of $200,000 of bonds made by the defendant the Bristol County Street Railway Company, the property and franchises of which had passed to the defendant the Taunton and Pawtucket Street Railway Company.

After the decision by this court which is reported in 218 Mass. 367, the case was remanded to the Superior Court under the rescript then issued, the plaintiff amended its bill and the Taunton and Pawtucket Street Railway Company, the only defendant in interest, filed an answer to the bill as amended, to which the plaintiff filed a replication.

The case was heard, on these pleadings and a stipulation, by *Morton,* J., who made the rulings stated in the opinion and an order for a foreclosure decree and reported the case under R. L. c. 159, § 27, for determination by this court.

The case was argued at the bar in March, 1915, before *Rugg,* C. J., *Loring, Braley, & Carroll,* JJ., and afterwards was submitted on briefs to all the justices.

*C. F. Choate, Jr., (J. W. Burke* with him,) for the Taunton and Pawtucket Street Railway Company.

*J. E. Cotter & J. P. Fagan,* for the plaintiff.

RUGG, C. J. This is a suit for the foreclosure of a trust mortgage indenture and another indenture supplementary thereto, dated respectively January 25, 1901, and August 20, 1901. The instruments will be referred to hereafter as the principal and supplemental indentures. The suit is brought by the mortgagee and trustee therein named for the sale of the property covered by them and the application of the proceeds to the satisfaction of bonds alleged to be secured thereby now owned by divers innocent holders for value. There are two defendants. One is the Bristol County Street Railway Company, which was organized as a street railway corporation under the general law about 1900. A receiver was appointed of its assets by the Circuit Court of the United States for this district and a sale of its property and franchises was made in 1904 to three persons, who, with their associates, in conformity with R. L. c. 112, §§ 12 and 13, formed a corporation called the Taunton and Pawtucket Street Railway Company, for the purpose of holding and operating the Bristol County Street Railway. It took over the franchises and physical assets of the earlier company. The Taunton and Pawtucket Street Railway Company is the other defendant. It alone contests this suit on numerous grounds. Certain aspects of the proceeding were before the court at a previous stage of this case as reported in 218 Mass. 367.

1. The judge of the Superior Court rightly ruled that the defendant was not estopped to deny the validity of the supplemental indenture. That instrument was not referred to by the decree of sale of the Circuit Court of the United States, nor is it made the basis of transfer in the defendant's chain of title. The point was not decided in 218 Mass. 367.

2. There is nothing disclosed on the record in the dealings between the plaintiff and the defendant subsequent to the receiver's sale, which prevents the latter now from assailing the validity of the supplemental indenture. Negotiations to the end that certain property be released from the mortgage by the plaintiff as mortgagee and trustee did not have this effect. Avoidance of dispute on a comparatively small matter by apparent yielding does not necessarily estop one from asserting his rights when the main question comes to an issue. See *Iverson* v. *Swan,* 169 Mass. 582. The payment of interest coupons on the bonds by the new company does not estop it from denying the legality of the supplemental indenture. *Nesson* v. *Millen,* 205 Mass. 515. The circumstances fail to disclose anything done or withheld from being done, or any act or omission, by the plaintiff to its harm, induced by reliance upon speech, conduct or silence of the new company.

3. The facts as to the mortgage indenture dated January 25, 1901, and the indenture supplemental thereto dated August. 20, 1901, are that the mortgage was issued covering all the goods, estates, car lines, property and franchises of the Bristol County Street Railway Company to secure, as and when authorized and issued by law, bonds not to exceed $250,000 in total amount. It was held when the cause was here before, 218 Mass. 367, that the defendant is estopped to deny the validity of that mortgage. The railroad commission by order of February 4, 1901, authorized $120,000 of bonds to be issued. That mortgage contained the restriction that the total amount of bonds issued should not exceed $175,000 without the consent of the holders of all outstanding bonds, and the provision that the bonds should be subject to call under certain conditions. On August 20, 1901, by the indenture between the Federal Trust Company and the Bristol County Street Railway Company it was agreed to abrogate these two limitations so that the entire amount of bonds might be issued as

authorized without the power to call before maturity. The indenture of August 20, 1901, contained no provisions of substance beyond these two and subsidiary clauses necessary to render them effective. It recited the provision of the principal mortgage to the effect that therein the mortgagor had covenanted "that it would at all times execute every such deed as the trustee might reasonably require or as should be necessary for further and more perfectly assuring to and to the use of the trustee . . . the mortgaged premises thereby conveyed or intended so to be, and especially for vesting in the trustee upon and for the said trusts and purposes all property thereafter acquired." Shortly afterwards the railroad commission authorized a further issue of bonds to the amount of $80,000. This authorization and issue were not based upon the supplemental indenture. The two appear to have been independent and disconnected acts having no relation to each other. Thereafter a new issue of bonds to the amount of $200,000 according to the form set forth in the supplemental indenture of August 20, 1901, was made, those earlier authorized being surrendered, those newly issued, so far as they took the place of the earlier issue, being treated as the same debt.

The substance of this transaction was that the original mortgage of January 25, 1901, subsisted throughout and still subsists as the main security. Of the total amount of $250,000 bonds intended to be secured by it only $200,000 have been authorized by the railroad commission and issued. The security for them depends chiefly upon the force of the original mortgage. The indenture of August 20, 1901, was supplementary to that. So far as it modified the terms of the bonds, it was something which did not affect the general creditors. So far as it subjected to the mortgage lien property acquired after the delivery of the principal mortgage and before August 20, 1901, it was a strict compliance with the covenant of the mortgagor contained in the principal indenture. The supplemental indenture was not a subsequently executed mortgage within the meaning of Pub. Sts. c. 112, § 64, St. 1889, c. 316, § 3, then in force, (now St. 1906, c. 463, Part II, § 50, Part III, § 103,) whereby it is required that when bonds have been issued by a street railway company a mortgage shall not subsequently be executed upon any of its property without including in the new security thereby established all previously

issued bonds and pre-existing debts and liabilities. The supplemental indenture added nothing to the comprehensive force of the principal mortgage. It did not in general increase the scope of its lien. Its primary purpose was to modify the terms of the bonds already voted. It had the effect of including within the lien of the mortgage the property acquired by the mortgagor between the time of the operation of the principal mortgage and its own date. In this regard no new power thus was conferred upon the trustee. The power already was vested in the trustee by the principal mortgage to take possession of all after acquired property and thus subject it to the lien of the mortgage without any act on the part of the mortgagor. *Adams* v. *Young*, 200 Mass. 588, 593, and cases there collected. The obligation rested on the mortgagor under the indenture to execute from time to time all appropriate instruments and bring subsequently acquired property under the lien of the principal mortgage and thus give additional security to the original debt. This agreement and obligation were a part of the security of the bonds. Since the principal mortgage is valid so far as concerns the defendant and the supplemental indenture conforms to its terms and requirements, it is not a new mortgage securing additional indebtedness. Such a transaction under all the circumstances here disclosed is not within the inhibition of the statute invoked by the defendant. The doctrine of *East Boston Freight Railroad* v. *Hubbard*, 10 Allen, 459 n., upon which it relies is not applicable to the supplemental indenture. It is not necessary to determine whether the ruling of the Superior Court that "the supplemental agreement of August 20, 1901, was a legal mortgage" was strictly accurate, for in any event that ruling correctly expresses its effect upon the rights of the defendant. So far as it brought property acquired after the principal mortgage under its lien, it was in conformity to its terms and not a new security for a further debt.

4. The defendant cannot now contend that the issue of bonds, payment of which is sought in this suit, was illegal as being in contravention of St. 1897, c. 337, § 2, (now St. 1906, c. 463, Part III, § 108, as amended by St. 1914, c. 671,) which prohibits the issue of bonds in excess of the amount of the capital stock paid in. That point is precluded by the estoppel discussed in 218

Mass. 367.  The entire amount of bonds voted was in issue under the principal mortgage.  *Commonwealth* v. *Smith*, 10 Allen, 448, has no application to the present facts.

The bonds in question all were issued in accordance with orders of authorization made by the board of railroad commissioners. Our statutes respecting the supervision of the issuing of bonds of street railways require not a perfunctory or merely formal approval, but a thoroughgoing investigation designed for the protection of the public, the stockholders and the secured and unsecured creditors, which results in an intelligent approval manifested by an adjudication.  This is the deep seated and unwavering public policy of the Commonwealth as shown by the statutes through a series of years.  *Augusta Trust Co.* v. *Federal Trust Co.* 82 C. C. A. 309.  But it is not necessary to determine how far the defendant would be affected by the action of the railroad commission in this regard, because it cannot be heard on the ground of estoppel.  By the express terms of the deed to the defendant and the decree authorizing the sale to it, the property was made subject to the mortgage to secure $200,000.

5.  The ruling that all the real estate, fixtures and rights of way owned by the Bristol County Street Railway Company at the time of the appointment of the receiver was covered by the mortgage and the supplemental agreement was right.  It is a sufficient answer to the chief contention of the defendant to say that, so far as concerns the parcels specifically described or incorporated by reference in the principal mortgage, it is immaterial whether the mortgagor owned them at the time the mortgage took effect or acquired them afterwards.  It has been the settled law of this Commonwealth for nearly eighty years, as was said by Chief Justice Gray in *Knight* v. *Thayer*, 125 Mass. 25, "that, under a deed with covenants of warranty from one capable of executing it, a title afterwards acquired by the grantor enures by way of estoppel to the grantee."  *Cressey* v. *Cressey*, 215 Mass. 65.  The same principle applies to mortgages.  *Winslow* v. *Merchants Ins. Co.* 4 Met. 306.  *Ayer* v. *Philadelphia & Boston Face Brick Co.* 157 Mass. 57.  Apparently all the land described in the schedule annexed to the decree of sale, with the exception of that in Attleborough, was actually owned by the Bristol County Street Railway Company at the time of the delivery of the prin-

cipal indenture. Although that instrument was dated on January 25, 1901, it was found by the master that it was delivered and recorded on February 4, 1901, which was later than the date and record of the deeds to it. The date of delivery of the mortgage under these circumstances fixes the rights of the parties. The date written in the indenture is not decisive. *Shaughnessey* v. *Lewis*, 130 Mass. 355.

The land in Attleborough was conveyed to the mortgagor just before the execution and delivery of the supplemental indenture of August 20, 1901, and was affected by the lien created by it. The land covered by the tax title deed, first to the Federal Trust Company and by it to the new company, was not released thereby from the lien of the mortgage. The Federal Trust Company released only its rights acquired under the tax deed and not its rights as mortgagee. Manifestly this was not a conveyance adversary to its rights as mortgagee. 218 Mass. at page 375.

It is too plain for discussion that the fixtures and other property affixed to the real estate after the principal and supplemental indentures became subject to the lien of the mortgage as and when attached to the land. The owner of land commonly becomes entitled to that which is united to it by accession or adjunction. The ruling that on the facts found by the master the real estate, fixtures, rights of way and interests in realty owned by the Bristol County Street Railway Company at the date of the receivership in the federal court were subject to the mortgage, was right. *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 519. *Meagher* v. *Hayes*, 152 Mass. 228. *Hook* v. *Bolton*, 199 Mass. 244. *Perley* v. *Cambridge*, 220 Mass. 507, and cases there collected.

Moreover, the decree of sale made by the Circuit Court of the United States provided that the land and other real estate rights "shall be conveyed to the purchaser or purchasers and shall be accepted by the purchaser or purchasers subject to" the principal mortgage indenture now being foreclosed. A sale in such terms by that court estops the purchaser to deny that the land and other real estate rights had passed under the lien of the mortgage.

It was expressly provided in the decree of the federal court authorizing the sale that the road, locations and franchise were subject to the mortgage. The principles applied when the case

was here before estop the defendant now from raising any question on this point.

6. The plaintiff contends that the approval of the mortgage by the railroad commissioners rendered valid and efficacious the clause in the mortgage that it should cover future acquired personal property. It relies upon *Howe* v. *Freeman,* 14 Gray, 566. But that case is not in point. There a legislative approval of the form of a mortgage was held to validate and make effective a provision that after acquired property should come under its lien. Here the approval of the railroad commissioners goes only to the amount of bonds to be issued and not to the form of the mortgage by which they are secured. The order of approval stated that the bonds were to be secured by "a mortgage of the railway equipment, franchise and other real and personal property of the company," and omitted any reference to future acquired property. An approval in this form scarcely can be stretched to cover the form of the mortgage here used, especially since it was stated in the petition to the commission for the approval of the issue of the bonds that the company proposed to include in the mortgage future acquired property. It is unnecessary to consider whether an express approval by the commissioners of the inclusion within the mortgage of after acquired property would have the same effect as an approval by legislative authority and hence render applicable the rule of *Howe* v. *Freeman,* 14 Gray, 566.

7. As an abstract proposition, the ruling that the mortgage as supplemented did not cover personal property acquired after the date of the supplemental indenture in August, 1901, was correct. The mortgagee did not take possession of any of this property by virtue of the power conferred by the mortgage. By no written instrument executed subsequent to its purchase was it brought under the lien of the mortgage. Under the general principle of law well established in this Commonwealth such after acquired personal property did not become subject to the mortgage either at law, *Jones* v. *Richardson,* 10 Met. 481, *Low* v. *Pew,* 108 Mass. 347, or in equity, *Moody* v. *Wright,* 13 Met. 17, *Blanchard* v. *Cooke,* 144 Mass. 207, *Wasserman* v. *McDonnell,* 190 Mass. 326, *Schlatter* v. *Young,* 197 Mass. 36, *Harriman* v. *Woburn Electric Light Co.* 163 Mass. 85. Doubtless the general rule in

equity elsewhere is contrary to our own. See *Central Trust Co.* v. *Kneeland,* 138 U. S. 414, 419, *Bear Lake Irrigation Co.* v. *Garland,* 164 U. S. 1, 15, *Augusta Trust Co.* v. *Federal Trust Co.* 82 C. C. A. 309, 312, *People's Trust Co.* v. *Schenck,* 195 N. Y. 398. Whatever may be the rule in other jurisdictions, the law is too firmly settled in this Commonwealth to be uprooted by judicial decision. But the materiality of this ruling is not apparent for the reason next to be discussed.

8. The judge further ruled in substance that the defendant was not now estopped from claiming that the property which came to it under the decree of sale from the Circuit Court of the United States was not subject to the mortgage. This was error. The plaintiff's exception to this ruling must be sustained. That decree directed that the sale be in two parcels. It was ordered that "parcel numbered one (1) consisting of the road, property, locations, franchises and assets of said corporation of every nature and description, except cash, and the passenger cars numbered 15, 17, 18, 19, 20 and 22, shall be sold and shall be conveyed to the purchaser or purchasers and shall be accepted by the purchaser or purchasers subject to the first mortgage dated the 25th day of January, 1901, given by the Bristol County Street Railway Company to the Federal Trust Company of Boston, trustee, to secure an authorized issue of two hundred and fifty thousand dollars ($250,000) five per cent first mortgage bonds of which two hundred thousand dollars ($200,000) have been issued and are now outstanding, and accrued interest thereon from July 1, 1904, to the date of the sale and expenses, disbursements and fees of said trustee under said mortgage as provided in said mortgage." Parcel numbered two consisted of the six passenger cars excepted out of the first parcel; these were not described as subject to any mortgage or encumbrance. The language of the decree as to the first parcel made it plain that all the property was to be treated by the purchaser as "subject" to the mortgage. That was a term of the sale. It bound the purchaser to accept all that property subject to the mortgage. That such is its meaning is made even more certain by the phrase of the description of the second parcel sold which was not subject to any mortgage. In substance the decree determines that for the purposes of the sale certain property is exempt from the mortgage and that all the rest of the

property is covered by the mortgage.   Doubtless the legal effect and scope of a mortgage of after acquired property "is a local question, and the decisions of the State court will be followed" in such matters by the federal courts.   *Thompson* v. *Fairbanks*, 196 U. S. 516, 522.   *Hiscock* v. *Varick Bank of New York*, 206 U. S. 28, 38.   *Dooley* v. *Pease*, 180 U. S. 126.   Reasons can be conceived why the decree of sale was made in the form adopted by the Circuit Court of the United States notwithstanding this principle and the Massachusetts decisions.   But it is not necessary to speculate upon this point.   The form of its decree is decisive.   That was a determination of a court of competent jurisdiction upon a matter pending before it.   It binds all parties and their privies.   The defendant is privy in estate to the purchaser at the receiver's sale.   *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 203 Mass. 159, 218.   The element of subjection to the mortgage was an integral part of the thing sold.   The price paid must have been based on the existence of this encumbrance.   The reasoning of the decision when the case was here in 218 Mass. 367, 372 to 375, is equally applicable to the phase now presented.   On principle it is decisive against the contention now urged by the defendant.   Whatever would be the effect of the mortgage apart from that decree, its scope and comprehensiveness is settled by the terms of the decree.   Any dispute as to its including within the lien of the mortgage property acquired by the mortgagor after the date of the mortgage and before the decree of sale, is as matter of law foreclosed by the express words of the decree.   The reservation of the right to the purchaser to appear and resist all interventions claiming a lien on the property does not go so far as to modify the force and effect of the clause as to the mortgage.   It relates only to intervenors seeking to establish other liens.   It does not reach to independent proceedings.

9.  For the reasons already stated the personal property acquired by the mortgagor before the execution and delivery of the supplemental indenture of August, 1901, was subject to the mortgage lien.

10.  The personal property held by the mortgagor under contracts for conditional sale at the time of the principal and supplemental indentures and described therein became subject to the mortgage lien.   The vendee of property in possession under

such a conditional contract of sale has a property interest which can be mortgaged. *Keepers* v. *Fleitmann,* 213 Mass. 210. *Dame* v. *C. H. Hanson & Co. Inc.* 212 Mass. 124. Upon performance of the condition the title came unqualifiedly under the mortgage. *Crompton* v. *Pratt,* 105 Mass. 255. *Day* v. *Bassett,* 102 Mass. 445.

11. There is a clause in the mortgage to the effect that "the mortgagor and every person having or claiming any estate right title or interest in or to the mortgaged premises or any part thereof will at all times do and execute every such deed act assurance and thing as the trustee may reasonably require or as shall be necessary for the further and more perfectly assuring to and to the use of the trustee upon the trusts and for the purposes herein expressed all and every part of the mortgaged premises hereby conveyed or intended so to be and especially for vesting in the trustee upon and for the said trusts and purposes all property hereafter acquired." The plaintiff contends that by virtue of this clause it is entitled to have this provision enforced against this defendant. That contention cannot be sustained. The receivers in the federal court were appointed on a petition of general creditors. The possession taken by such receivers was in the interests of all parties including the general creditors. The receivers' sale of the assets of the mortgagor put an end to the interests of the Bristol County Street Railway Company. It likewise ended the practical possibility of enforcing the contractual obligations of that company. While the purchaser bought the property subject to the mortgage, it was not required to assume like obligations imposed by the mortgage upon the original mortgagor. The sale subject to the mortgage meant that the purchaser took the property with all the infirmities which had come into existence and attached to it, but not with a personal covenant to perform all those contractual duties which depended upon the agreements of the original mortgagor. The performance of these agreements was not assumed nor guaranteed by the new company. See *Harrison* v. *J. J. Warren Co.* 183 Mass. 123. An agreement to subject future acquired property to the lien of the mortgage is an executory contract and not a present conveyance. See *Forbes* v. *Howe,* 102 Mass. 427, 435. It would be contrary to St. 1900, c. 381, § 2, now St. 1906, c. 463, Part III, § 144, to require the new company to comply with such a provision in the nature of an

executory agreement in a mortgage given by the original company. That statute in substance prohibits any action "to enforce any liability incurred by said original company" with exceptions not here material, with the further provision in favor of enforcement of their lien by holders of an outstanding mortgage.

12. The plaintiff further contends that it is entitled to have the receiver under order from the court take possession, for the purpose of subjecting it to the lien of the mortgage, of all property acquired by the Bristol County Street Railway Company after the mortgage, of which the plaintiff has not taken possession. This contention cannot be supported. By the appointment of the receiver by the federal court, rights of general creditors intervened and the plaintiff cannot now enforce its contract rights against property to which their interests or those of the purchasers at the receiver's sale have attached. *Harriman* v. *Woburn Electric Light Co.* 163 Mass. 85, 89. The plaintiff has no rights in this respect further than those preserved to it under the decree of the federal court. A different question, which need not now be considered, would arise if the original receiver had been appointed at the instance of the mortgagee for the purpose of enforcing its contract rights to after acquired property before the rights of other creditors had attached to it.

13. The parties and the judge below have assumed that the open and closed cars were personal property. Assuming that they are right, without so deciding, (see *Hall* v. *Carney,* 140 Mass. 131; *Toronto Railway* v. *Toronto Corp.* [1904] A. C. 809; *Williamson* v. *New Jersey Southern Railroad,* 2 Stew. 311, 327, 337,) no error appears in the decree in respect to the cars ordered to be sold. The new company itself has subjected several cars to the lien of the mortgage. The others were by the decree authorizing the sale by the receiver in the Circuit Court of the United States expressly or impliedly recognized as subject to the lien of the mortgage, and this cannot now be questioned by the defendant.

14. So far as the real estate or personal property is subject to the lien of the principal mortgage, the defendant is not at liberty to attack the mortgage. That was settled by the former decision.

15. The federal court by its decree of sale did not retain exclusive jurisdiction of the case for determining all claims for priority of payment and of lien upon the property sold by its

receiver. The clause in its decree that the purchaser or purchasers at the foreclosure sale and their assigns shall be "entitled to appear, resist, and take evidence" respecting such liens and priorities, does not have this effect. It does not purport to draw to that court exclusive jurisdiction of all disputed claims which subsequently arise touching the property. No lien or priority is in question in the present suit save that arising out of the principal and supplemental indentures held by the plaintiff. The rights of the plaintiff as the trustee under the indenture to secure bonds to the amount of $200,000 were preserved in that decree. It hardly could have been the purpose of that court to require the mortgage of the plaintiff, expressly recognized by its decree to be in full force and effect, to be foreclosed at its bar and the jurisdiction of other courts of competent jurisdiction to be ousted simply because as incidental to such foreclosure a question might be raised whether a bit of personal property was within the lien of that mortgage. The form of the decree in the federal court in the case at bar was different from those in *Julian* v. *Central Trust Co.* 193 U. S. 93, and in *Wabash Railroad* v. *Adelbert College*, 208 U. S. 38, upon which the defendant relies, and the principles there established have no application to the issues raised upon the facts here disclosed.

16. The general ruling was right, excluding the offer of the defendant to prove all the allegations of fact in its answer to the plaintiff's amended bill so far as not covered by the master's report and stipulation. The only aspect of that offer, not disposed of by what already has been said, which need be considered, is that the Circuit Court of the United States in its receivership proceedings especially considered and adjudicated that the plaintiff as mortgagee had no claim upon six passenger cars identified by numbers and included in its decree for sale under which the defendant claims. It does not appear that any of these passenger cars are included in the present decree for sale except one which the defendant itself has made subject to the lien of the plaintiff's mortgage. Indeed, the contrary is shown by the identifying car numbers. Hence, that part of the offer of proof was irrelevant.

17. All the rulings made have been dealt with one by one. The decree for foreclosure has not been criticised as to its details at the argument. So far as its form and the principles on which

it rests have been challenged, they have been discussed and are upheld by what has been said, save in the single particular pointed out in paragraph 8 of this opinion.

The plaintiff's exception to the refusal to rule that the defendant is estopped to claim that any part of the property which came to it (through transfer from the purchasers at the receivers' sale) by virtue of the decree of the federal court was not subject to the mortgage, is sustained. Its other exceptions and all those of the defendant are overruled. The order for the decree is affirmed and the decree is to be entered, except that Schedule A annexed to the decree is to be modified in accordance with paragraph 8 of this opinion, and such changes as to calculations and figures, if any, as the lapse of time may require are to be made. When thus modified, the decree may be entered.

*So ordered.*