Mowry vs. White.

## MOWRY VS. WHITE.

CHATTEL MORTGAGE—*On lumber in Wolf River &c.; place of filing renewal affidavit—On lumber cut and to be cut; how far valid—Intermixture of lumber previously and subsequently cut, effect of.*—ATTACHMENT, *pending a petition in insolvency.*

1. Under ch. 213, Laws of 1860, it was not necessary that the copy of a mortgage upon lumber or timber in the Wolf river or its tributaries, which is required by that act to be filed in the office of the clerk of the city of Oshkosh, to make such mortgage valid against any other person than the parties thereto, should have attached to it the affidavit described in section 5, chapter 45, R. S., in order to preserve the lien thereof after the expiration of a year; but it is sufficient that such affidavit is annexed and filed in the office of the clerk of the town where the mortgagor resides.

2. A mortgage of "all that certain lot of pine logs cut and to be cut" by the mortgagor during the then current lumbering season, *held* valid as to logs cut before its execution and delivery, but not as to those cut afterwards.

3. The mortgagee did not acquire any interest in the logs cut afterwards, by reason of their having been intermixed by the mortgagor with those cut before the mortgage was executed. His *assent* to the intermixture must be assumed from his having stipulated in the mortgage for a lien upon both classes of logs.

4. In a controversy between such mortgagee and a creditor of the mortgagor who had attached the logs, as well those covered by the mortgage as those cut after its execution, it appearing that they had been intermixed with the assent of the mortgagee, and no difference in quality or value being shown: *Held,* that the attachment was valid as to such a proportion or quantity of the logs as was cut after the execution of the mortgage.

5. The mere pendency of a petition in insolvency, does not debar the creditors of the insolvent debtor from pursuing the ordinary remedies against him for the collection of their debts; and among others, the remedy by attachment.

6. It may be that the pendency of such an application may afford ground for other creditors, or even the debtor himself, to obtain a stay of proceedings in the attachment suit, and afterwards to have the property transferred to the assignee when appointed. But this question did not arise in the present case.

21 417
78 381
21 417
82 344
21 417
84 610
21 417
90 630
21 417
54 LRA 332

APPEAL from the Circuit Court for *Winnebago* County.

Replevin for 100,000 feet of logs, held by defendant, as sheriff, by virtue of an attachment levied thereon September 23, 1865, at the suit of one Haskin, as the property of one Elbridge Smith. Plaintiff put in evidence: 1. A contract between himself and said Smith, October 22, 1863, by which the latter agreed to cut and deliver to the former during 1864 and 1865, in the village of Menasha, 420,000 feet of pine logs, to be cut in S. 5, T. 26, R. 15, &c.; and plaintiff agreed to advance certain amounts thereon before delivery, and pay the balance in certain installments after the logs were delivered; and Smith agreed to execute to plaintiff, at any time on his request, a mortgage of all the logs then cut or to be cut, to secure the advances so made or to be made. 2. A mortgage from Smith to plaintiff, filed with the town clerk of the town of Menasha (where Smith resided), February 11, 1864; and an affidavit of renewal, in due form, filed and attached to said mortgage, February 10, 1865. The mortgage was of "all that certain lot of pine logs, cut *and to be cut*," by said Smith, and which were or were to be "hauled into Mill Creek and the Embarrass river, in Shawano county," &c.; with which was also offered an affidavit of renewal filed in the office of the city clerk of Oshkosh, December 13, 1864. Defendant objected to this evidence, on the ground that the mortgage had not been renewed according to the statute, and that it was upon property not in existence at the time of its execution; but the objection was overruled. 3. A release by Smith to plaintiff, under date October 2d, 1865, of all the interest of the former in the logs covered by the terms of the mortgage. 4. A release by Weed, Gumaer & Co., to plaintiff, for a valuable consideration, of their right and title to so many of said logs as had been cut by Smith on their land. The oral testimony showed that these were cut without their consent, and amounted to 60,000 feet. Smith also testified that three-

fourths of the logs were cut before the mortgage was delivered to plaintiff. For the defendant, Haskin testified that at the time of suing out the writ of attachment against the property of Smith, he was a creditor of Smith's to the amount stated in the affidavit attached to the writ (about $700); and that the attachment suit was still pending. Defendant also put in evidence the summons and writ in the attachment suit. The plaintiff then put in evidence (against defendant's objection) the " record of proceedings and final judgment of discharge in the circuit court for Winnebago and Fond du Lac counties, in the matter of the petition of Elbridge Smith to be discharged from his debts as an insolvent debtor; which proceeding was commenced in January, 1863 ;" also a transcript of a judgment entered under said insolvency proceedings, in favor of Haskin against Smith, for an indebtedness of $125, and the discharge of the same by order of court. Smith was also permitted to testify (against objection) that the third cause of action set out in Haskin's complaint in the attachment suit, was the same as that mentioned in his schedule of indebtedness as existing in Haskin's favor; and that he was not indebted to Haskin on any other cause of action.

The court instructed the jury that creditors of an insolvent, during the pendency of proceedings in insolvency, cannot obtain a priority of claim over other creditors, by attachment; and that if Smith was the owner of the property, and conveyed it to the plaintiff before the commencement of the suit, whether by mortgage or otherwise, plaintiff was entitled to a verdict. The court refused instructions asked by defendant, to the effect, 1. That the mortgage from Smith to plaintiff, because it had not been renewed according to the statute, and because it was upon property subsequently to be acquired, was void as to creditors of Smith and subsequent bona fide purchasers. 2. That the discharge of an insolvent effects only the indebtedness set forth in the schedule attached to his petition.

Verdict for the plaintiff; new trial denied; and defendant appealed from a judgment on the verdict.

*Freeman & Hancock*, for appellant, argued that under ch. 213, Laws of 1860 (which provides that chattel mortgages on such property as that in dispute, shall be filed in the office of the city clerk of Oshkosh), it was necessary, in order to continue the mortgage in force, that the affidavit for a renewal (sec. 5, ch. 45, R. S.) should be filed at Oshkosh, within thirty days next preceding the expiration of a year from the first filing. *Newman v. Tymeson*, 12 Wis., 448. 2. The mortgagee acquired no interest, because the property, or a part of it, was not in existence when the mortgage was executed. *Comstock v. Scales*, 7 Wis., 159; *Chynoweth v. Tenney*, 10 Wis., 398. 3. The discharge of an insolvent debtor only discharges the indebtedness set forth in his schedule. R. S., ch. 161, sec. 23; Chitty on Con., 213; *Leonard v. Baker*, 15 M. & W., 202; *Tyers v. Stunt*, 7 Scott, 349; *Baker v. Sydee*, 7 Taunt., 179. 4. Such discharge is a personal privilege of the debtor, except as to his bail, indorsers, assignees and sureties; and the plaintiff cannot take advantage of it in this case.

*Gab. Bouck*, for respondent:

1. Plaintiff had a valid claim under the mortgage to 340,-000 feet, which was cut before the delivery of the mortgage to him. The mortgagor, by indiscriminately mixing logs cut afterwards with those mortgaged, could not defeat plaintiff's claim; and if he, or those under him, claim the logs cut afterwards, they must identify them. *Jenkins v. Steanka*, 19 Wis., 126; *Hart v. Ten Eyck*, 2 Johns., 108; 1 Strobh., 505; 15 Ves., 432; 2 W. & B., 265. 2. Plaintiff had a good title under Smith's release of October 2, 1865. The attachment was not a lien as against plaintiff, except upon proof of a valid indebtedness of Smith to Haskin; but Smith had been discharged from this debt in the insolvent proceedings. The attachment was not authorized by law. *Sexton v. Mann*, 15 Wis., 162.

Haskin was bound by the judgment, as to the *amount* of Smith's indebtedness to him. *Small v. Graves*, 7 Barb., 576; *Ayres v. Scribner*, 17 Wend., 407; *People v. Stryker*, 24 Barb., 649; *Stanton v. Ellis*, 2 Kern., 575.

DIXON, C. J. It was not necessary that the affidavit prescribed by sec. 5, ch. 45, R. S., should have been annexed to the mortgage, or copy on file in the office of the clerk of the city of Oshkosh. Chapter 213, Laws of 1860, does not require this. It was enough that the proper affidavit was made, annexed and filed in the office of the town clerk of the town of Menasha, where the mortgagor resided.

The mortgage is valid as to the logs cut before its execution and delivery, but not as to those cut afterwards. *Single v. Phelps*, 20 Wis., 398.

Nor did the mortgagee acquire any interest in the logs cut afterwards, by reason of their having been intermixed with those cut before the mortgage was executed. It is the willful and indiscriminate intermixture of the goods of another with one's own, so that they cannot be distinguished, which entitles the owner of the goods so intermixed to hold the whole. The intermixture was not willful. The mortgagee having stipulated in the mortgage for a lien on the logs to be cut, as well as those already cut, his assent to the intermixture must be presumed. Such was, no doubt, the intention of the parties. The logs having been intermixed with the assent of the parties, and it not appearing that there was any difference in the quality or value of those cut before and those cut after the execution of the mortgage, it follows, according to the rule established in *Young v. Miles*, 20 Wis., 615, that the mortgagee must share the logs ratably with the attaching creditor of the mortgagor, in proportion to the quantities cut before and after the mortgagee acquired his lien. This rule applies to all the logs except those cut on the lands of Weed, Gumaer & Co. As

to those, the title of the mortgagee does not depend upon the mortgage, but upon the subsequent transfer of Weed, Gumaer & Co.

The attachment was valid, and the attaching creditor acquired a lien on the logs to the extent above stated, notwithstanding the insolvent proceedings given in evidence. It appears from the record that those proceedings were commenced in January, 1863, but when they were ended, or when Smith was discharged from his debts, does not appear. We cannot presume that judgment had been entered, and the debtor disdischarged, at the time the writ of attachment issued and was levied; and consequently we must assume that the proceedings in insolvency were then still pending. The mere pendency of a petition in insolvency and for a discharge does not debar the creditors of the insolvent debtor from pursuing the ordinary remedies against him for the collection of their debts. No assignment of the estate of the debtor is directed until the petition is heard, and not then unless it satisfactorily appears to the court or judge that he is entitled to be discharged according to the terms of the act. R. S., ch. 161, sec. 17. The assignment is of such property as the debtor has at the time it is executed. Sec. 18. Until the assignment is made, the debtor remains in the full possession and enjoyment of his estate, and may dispose of the same at pleasure, subject only to his accounting for and paying over the proceeds at his examination; which if he does not do, he will not be entitled to be discharged. The terms of the statute are very clear. See the sections above cited, and sections 15, 16 and 24. It would be most unreasonable to suppose, whilst the debtor thus retains the possession and control of his property, that the legislature intended that his creditors should be deprived of every remedy against him for their seccurity or protection. A dishonest debtor might then resort to the proceeding for the very purpose of defrauding his creditors. There is nothing in the stat-

ute to authorize any such conclusion, and we must hold that the writ of attachment was well issued and levied on such proportion of the logs in question as were cut after the execution and delivery of the mortgage, not including those cut on the land of Weed, Gumaer & Co. The utmost effect that can be given to insolvent proceedings in cases of this nature is, that they may afford ground for other creditors, and perhaps for the debtor, with a view, if possible, to have the attached property transferred to the assignee, to apply before discharge for a stay of proceedings, and afterwards to have the property transferred to the assignee, when appointed. The pendency of such proceedings is certainly no bar to an attachment.

*By the Court.*—Judgment reversed, and a new trial awarded.