Lanyon and another vs. Woodward.

*October 13 — October 31, 1882.*

CONTRACT. *(1) Raising crops on shares: Stipulations as to title. (2) Case stated: Contract construed to be for raising crop on shares, not a chattel mortgage.*

1. In a contract to raise a crop on shares the parties may stipulate what interest each shall have in the crop, or that the legal title shall be and remain in one of them, with a charge upon the crop or some part of it in favor of the other, and such stipulations will be valid as between themselves. *Comstock v. Scales,* 7 Wis., 159,

and other cases in this court holding that a chattel mortgage of goods not *in esse* or of after acquired goods is inoperative, distinguished.

**2.** A contract dated January 24, 1879, provided in substance as follows: "In consideration of L. & Bro. having advanced, furnished, credited, and delivered to us, P. and M., this day, 67 bushels of flaxseed, I hereby agree to sow the same for him . . . on the farm to be occupied by me this present season, and also to deliver to him, on or before December 1, 1879, 83 42-56 bushels of flaxseed. If, in case of failure of crop, and I am unable to pay him the 83 42-56 bushels of flaxseed at said time, I hereby agree to pay him, on demand, the value that said seed would be to him in money at the time of demand, with interest from the time said seed should have been delivered. I further agree to harvest the entire product of said flaxseed, . . . and deliver to him, the said L. & Bro., the entire crop of flaxseed to be raised by me this season on or before December 1, 1879, and at the same time to sell my entire crop of flaxseed to him at a price 25 cents per bushel less than the market price in Chicago on the same day. In case the said L. & Bro. makes me any further advances, they are to be settled in flaxseed at the same price, with interest until paid; it being hereby expressly agreed and understood that the seed so furnished, and the entire crop to be raised from the said advanced seed, until delivered and settled for as above, shall be and remain the property of said L. & Bro., and to be kept and held by me as his agent, and in no other way." On the contract, under the same date, was indorsed: "Received on the within contract the sum of $14, to be taken out of the price of said flaxseed, together with 10 per cent. interest from date." In an action of replevin, commenced October 13, 1879, by L. & Bro. against one who had acquired the rights of P. in the crop, with notice of the contract, *held:*

(1) The contract is substantially one for the raising of crops on shares.

(2) The legal title to the whole crop was in L. & Bro., subject to their obligation to pay for all in excess of 83 42-56 bushels.

(3) L. & Bro. might claim a delivery of the 83 42-56 bushels whenever the flaxseed was ready for delivery, even before December 1, 1879. But the delivery of the balance of the crop before December 1st was at the option of P. and M., and the same was not subject to be replevied before that date.

(4) The entire crop having been delivered to the plaintiffs by the officer serving the writ, and by them sold, the defendant was entitled to judgment for the value of his interest in the excess over

---

---

83 42-56 bushels on December 1, 1879, less the sum of $14 and interest, indorsed on the contract.

CASSODAY, J., dissents from the construction given to the contract, holding: (1) There was an absolute sale to P. and M. of the flaxseed furnished to them. (2) The contract was, in effect, a mortgage upon the seed so furnished to secure payment therefor, and for any other advances thereafter made, with an attempt to make a mortgage upon the future crop not then in existence. (3) As a mortgage upon the future crop the contract was inoperative. It amounted merely to an executory contract to sell the crop to L. & Bro., and, before delivery, vested in them no title which would entitle them to replevy such crop.

APPEAL from the Circuit Court for *Grant* County.

Replevin for a quantity of flaxseed. The plaintiffs claim the seed by virtue of the following agreement under which it was grown:

"MINERAL POINT, WISCONSIN, January 24, 1879.

"In consideration of *Lanyon & Bro.*, of Mineral Point, Wisconsin, having advanced, furnished, credited, and delivered to us, George Pettis and Caroline Moss, this day, sixty-seven bushels of prime flaxseed, I hereby agree to sow the same for him in good, suitable, and well prepared ground, on the farm to be occupied and cultivated by me the present season, in section twenty, township six, range one, in the town of Wingville, county of Grant, Wisconsin, and also to deliver to him or his order, on or before the 1st day of December, 1879, 83 42-56 bushels of prime flaxseed.

"If, in case of failure of crop, and I am unable to pay him the said 83 42-56 bushels of prime flaxseed at said time, I hereby agree to pay him or his order, on demand, the value that said seed would be to him in money at the time the demand shall be made, with interest at the rate of ten per cent. per annum from the time said seed should have been delivered.

"I further agree to harvest the entire product of said flaxseed, to thresh and clean the same, and deliver to him, the

said *Wm. Lanyon & Bro.*, the entire crop of flaxseed to be raised by me this season at Mineral Point, on or before the 1st day of December, 1879; and at the same time and place to sell my entire crop of flaxseed to him or his order, at a price twenty-five cents per bushel less than the average price of flaxseed in Chicago on the same day, as shown by the Chicago market reports. In case the said *Wm. Lanyon & Bro.* makes me any further advances, they are to be settled in flaxseed at the same price, together with ten per cent. interest on the same until paid. A proper deduction is to be made from all flaxseed delivered in case it is not clean or of prime quality.

"It being hereby expressly agreed and understood that the seed so furnished, and the entire crop to be raised from the said advanced seed, until delivered and settled for as above, shall be and remain the property of said *Wm. Lanyon & Bro.*, and to be kept and held by me as his agent, and in no other way. All of the said seed to be delivered, well cleaned and in prime order, to said *Wm. Lanyon & Bro.*, on their order, at their warehouse, Mineral Point, county of Iowa, Wisconsin, on or before the 1st day of December, 1879."

There is an indorsement on the agreement as follows:

"MINERAL POINT, January 24, 1879.

"Received on the within contract the sum of ($14) fourteen dollars, to be taken out of the price of said flaxseed, together with ten per cent. interest from date."

The defendant claims the seed under a purchase from G. & W. Barnes, who sold the same in June, 1879, on an execution against Pettis, and who purchased the same at the execution sale, and on a chattel mortgage executed by Pettis to the defendant July 9th, in that year. The defendant purchased of Barnes, July 28, 1879. When he made that purchase, and when he took the mortgage on the flax crop, the defendant had notice of the contract between the plaintiffs and Pettis and Moss.

This action was commenced October 13, 1879. The interest of Moss does not figure in the action and is not considered. The cause was tried without a jury. The court found that under the agreement with Pettis and Moss the plaintiffs were entitled to the whole crop of flaxseed raised by them under the contract,— being 206 30-56 bushels,— and that they must pay the defendant at the rate of one dollar per bushel,— which was found to be the contract price on October 13, 1879,— for 122 44-56 bushels. The advance of $14, indorsed on the contract, was not allowed to the plaintiffs.

The defendant appealed from the judgment entered pursuant to the findings.

For the appellant there was a brief by *Carter & Cleary*, and oral argument by *Mr. Carter*.

For the respondents there was a brief by *Lanyon & Spensley*, and oral argument by *Mr. Spensley*.

LYON, J. The contract of January 24, 1879, between the plaintiffs of the one part, and Pettis and Moss of the other part, is, we think, substantially a contract for the raising of a crop of flax on shares. The plaintiffs furnished the seed, and Pettis and Moss the land and labor necessary to produce the crop. The parties stipulated that the whole crop of flaxseed should be and remain the property of the plaintiffs, of which 83 42-56 bushels should be theirs absolutely, and the balance should be subject to the payment by them to Pettis and Moss of the Chicago market price of flaxseed, less twenty-five cents per bushel, and less advances. Pettis and Moss also stipulated to pay the plaintiffs the deficiency, should the crop fail to yield them the 83 42-56 bushels. Undoubtedly parties making a contract to raise a crop on shares may make valid stipulations for the disposition of the crop. They may stipulate what interest each shall have in it, or that the legal title to the crop shall be and remain in

one of them, with a charge upon the crop or some part of it in favor of the other, and such stipulations will be valid as between themselves.

This view does not conflict with the cases in this court in which it has been held that a chattel mortgage of goods not *in esse*, or of after acquired goods, is inoperative. In the first of these cases (*Comstock v. Scales*, 7 Wis., 159), the rule was applied to a mortgage on a crop of grain, executed to one not otherwise interested in the crop, at or about the time the seed for the crop was sown and before it was up. The same rule was applied in *Chynoweth v. Tenney*, 10 Wis., 397; *F. L. & T. Co. v. Commercial Bank*, 11 Wis., 207; *Single v. Phelps*, 20 Wis., 398; *Mowry v. White*, 21 Wis., 417; *Hunter v. Bosworth*, 43 Wis., 583. In each of these cases a debtor sought to secure his creditor by a mortgage on property either not *in esse*, or which neither of them then owned, but which the mortgagor expected to acquire at some future time.

The contract now under consideration belongs to an entirely different class, and its validity and effect must be determined by rules of law which have no application to the above cases. Under this contract the parties to it embarked in a joint adventure, to wit, the raising of a crop of flax-seed. For their share of the proceeds of the adventure the plaintiffs were to have the whole crop, which the other parties undertook should amount to 83 42-56 bushels. Pettis and Moss were to receive as their share of the adventure, from the plaintiffs, the Chicago market price, less twenty-five cents per bushel for the whole crop in excess of 83 42-56 bushels.

We perceive no grounds upon which the validity of the contract can be successfully denied. We think it valid, and that the parties to it take under it precisely what they stipulated for. We are of the opinion, therefore, that the legal title to the whole crop was always in the plaintiffs, subject

Lanyon and another vs. Woodward.

.only to their obligation to pay Pettis and Moss the stipulated price for the seed raised in excess of the 83 42-56 bushels. By the terms of the contract Pettis and Moss were to .deliver all of the seed raised, well cleaned, to the plaintiffs .on or before December 1, 1879. As to the 83 42-56 bushels, which belonged to the plaintiffs absolutely, although Pettis and Moss had until that date to prepare and deliver it, yet if it was ready for delivery before that date it is not perceived why the plaintiffs might not have claimed a delivery as soon as it was ready. Pettis and Moss could obtain no advantage by retaining it beyond that time, and it would be an unreasonable construction of the contract to hold that they might wantonly do so. As to the balance of the crop, the rate per bushel to be paid by the plaintiffs was to be fixed by the market price in Chicago on the day of delivery. It was optional with Pettis and Moss to deliver and take the price before December 1st, but they did not agree to do so. They might deliver on that day, and thus take the benefit of the Chicago price of that day. This part of the crop, therefore, was not subject to be replevied by the plaintiffs until after December 1st.

Thus far we have only considered the rights of Pettis and Moss. The defendant is in no position to claim any other or greater rights. He acquired whatever interest he had in the flaxseed with full knowledge of the plaintiffs' interest therein, and he is no better or different position in respect to it than Pettis and Moss would have been had they retained such interest, and were they the defendants in this action. Moreover, the uncontradicted oral testimony is that the seed was sold on the Barnes execution, subject to the plaintiffs' interest therein, by virtue of the contract of January 24, 1879. The effect of this testimony was somewhat discussed in the arguments of counsel, but it is unnecessary to determine its effect, because it may be stricken out without affecting the rights or liabilities of the parties.

Although as to the balance of the flaxseed over and above the 83 42-56 bushels the action was prematurely brought, because the defendant, who succeeds to the rights of Pettis, had until December 1, 1879, to deliver the same, yet at that time the right of the plaintiffs thereto would have been absolute on payment of the sum stipulated to be the amount of the interest of Pettis and Moss therein. The trial was had after December 1st. The seed had been delivered to the plaintiffs by the officer who served the writ of replevin, and presumably had been marketed. In that case there could be no return of any of the seed to the defendant. Regularly the judgment should have been for a return to the defendant of that part of the seed in which he had an interest, or for its value, in case return could not be had. But, under the circumstances, the judgment is equivalent to that, for it allows the defendant the value of his interest in the seed.

The court found the value of that interest to be one dollar per bushel. That was the market price at the place of delivery on October 13, 1879, the date of the service of the writ. We suppose that figure is obtained by deducting twenty-five cents from the Chicago market price on that day. The seed rose in value afterwards, so that, as we understand the testimony of one of the plaintiffs, the contract price on December 1, 1879, was $1.25 per bushel. The defendant has the right to have his interest in the seed estimated by the price on that day. Because the value of defendant's interest in the seed was measured by an erroneous standard to his prejudice, the judgment must be reversed.

It is claimed for plaintiffs that they should have been allowed an advance of $14 made to Pettis and Moss at the date of the contract. We think the claim well founded, and the defendant's interest in the 122 44-56 bushels should have been found to be $14 and the agreed interest thereon less than the value of the seed at $1.25 per bushel.

*By the Court.*— The judgment of the circuit court is re-

versed, and the cause will be remanded, with directions to that court to render judgment in accordance with this opinion.

CASSODAY, J. I am compelled to dissent from the construction given by the majority of the court to the contract made January 24, 1879. There is no question of the defendant's right to the whole of the flaxseed unless the plaintiffs were the owners by virtue of the written agreement made three months before the seed was sown from which the flaxseed in question was grown. This being an action of replevin, the only question is whether the title to the crop sown by Pettis and Moss three months after making the contract, on their own land, was in the plaintiffs when this suit was commenced. The plaintiffs " furnished " and " delivered " the seed to Pettis and Moss, and were to be " *credited* " for the seed so " *advanced.*" It is true, Pettis and Moss agreed to sow the same for the plaintiffs, and to deliver to them or their order December 1, 1879, 83 42-56 bushels of prime flaxseed. But it was expressly stipulated that " in case of failure of crop," so that Pettis and Moss were " *unable to pay* " the plaintiffs the 83 42-56 bushels " at said time," then by said agreement they were " *to pay* " to the plaintiffs or to their order, " *on demand, the value* " that said seed would be to them in money at the time the demand should be made, with interest at the rate of ten per cent. per annum from the time said seed should have been delivered.

It is true, the seed so furnished was, by the contract, to remain the property of the plaintiffs, but it is evident this was merely by way of security; for it was not to be returned to them, nor sold for them, but Pettis and Moss were to sow the same in their own land, and then to pay for the same either in flaxseed thereafter to be grown, or in money, as indicated. This is corroborated by the clause: " In case the said *Wm. Lanyon & Bro.* makes me *any further ad-*

*vances* they are to be settled in flaxseed *at the same price*, together with ten per cent. interest on the same until paid." The words " at the same price" clearly refer to the former clause, whereby Pettis and Moss agreed "to sell" their " entire crop of flaxseed" to the plaintiffs, or their "order," at Mineral Point, December 1, 1879, "at a price twenty-five cents per bushel less than the average price of flaxseed in Chicago on the same day as shown by the Chicago reports." The words "any *further* advances" clearly refer to any flaxseed or money which the plaintiffs might thereafter advance to Pettis and Moss on *credit* as they had previously " advanced" and had "credited" to them the sixty-seven bushels. This is further corroborated by the fact that after the contract was made, and on the same day, the plaintiffs did *further advance* to them $14, which was evidenced by a receipt indorsed upon the back of the contract. I am unable to construe the contract as a " contract for the raising of a crop of flaxseed on shares," or a *joint* "*adventure*" by the plaintiffs and Pettis and Moss. The amount which the plaintiffs were to receive was not dependent at all upon the amount of the crop. It was wholly immaterial to them whether the yield of flaxseed was great or small. Even if the crop had been an entire failure, yet Pettis and Moss were bound to pay them, December 1, 1879, the full value in money of 83 42-56 bushels of flaxseed. The risk or venture was, by the express terms of the contract, wholly upon Pettis and Moss. The conditions imposed were merely by way of better securing the plaintiffs for the flaxseed and money thus " advanced" by them, and which they thus had credited to them. The seed, as well as the money thus "advanced" and thus "credited," and thus to be repaid, were manifestly to be converted by Pettis and Moss to their own use and benefit. Their entire loss or extinction by such conversion would, by the terms of the contract, fall upon Pettis and Moss and not upon the plaintiffs. The contract was, in effect,

a mortgage for the amount of the advances so made, and those which might thereafter be made, upon the seed so "furnished," with an attempt therein to make the same a further mortgage upon the future crop of flaxseed, not then in existence, but to be grown from seed to be sown three months thereafter. The trial judge manifestly regarded the contract as a valid mortgage upon the whole of such future crop, otherwise there would have been no significance to the filing of the contract, nor of the time it was done. The opinion of this court seems to go upon the same theory, so far as the crop grown being a security for the repayment of the $14 is concerned. Certainly the money was not let upon shares, but was advanced on credit, and its repayment was attempted to be secured upon a crop thereafter to come into existence. That this could not be done, and that the circuit court was in error, would seem to follow from the principles of law announced in the cases cited in the opinion of the court in this case.

For myself, I am unable to understand how Pettis and Moss could "contract for the raising of a crop of flaxseed on shares" under a contract in which "the whole crop of flaxseed should be and remain the property of the plaintiffs." Nor am I able to understand what "share" would remain for Pettis and Moss of the crop raised by themselves on their own land, if "the plaintiffs were to have the *whole crop*," "for *their* share of the adventure." Nor am I able to understand why Pettis and Moss agreed in the contract "to sell" *their* "entire crop" of flaxseed to the plaintiffs, or to their order, at the price and at the time named, if it was to be, the moment it came into existence, the property of the plaintiffs, and at no time to be the property of Pettis and Moss, though raised by them on their own land. Nor am I able to discover in the contract anything which the plaintiffs and Pettis and Moss were to have or own in common, nor in which each party were to have a "share" or

take a " venture." The plaintiffs were simply to be repaid with interest for all that had been " advanced " by and " credited " to them, and for all they might thereafter advance to Pettis and Moss. If the plaintiffs got anything more, it was to be by a sale to them from Pettis and Moss for a stipulated price which they were to pay.

Such being the contract, I must regard the seed "furnished" and "advanced" by and "credited" to the plaintiffs at the time of making the contract as an absolute sale on credit on the one hand, and an absolute purchase on credit on the other, with a contract which, in effect, was a chattel mortgage back to the vendors on the seed, to secure to them the payment of the value of 83 42-56 bushels of such seed December 1, 1879. So I must regard the $14 " advanced " by and " credited " to the plaintiffs as a mere loan to Pettis and Moss, with security back upon the seed so advanced. It is true, the contract in form purported to be a security for the repayment of the flaxseed or its value in money, and the $14 and interest upon each, upon a crop which Pettis and Moss expected to raise upon their land, but which was not then in existence, and which did not begin to grow for more than three months thereafter, but as a security it must be conceded that it was wholly inoperative, even as to the seed advanced and the money, upon the principles of the authorities cited in the opinion of the court and many others which might be added. As to the crop not then in existence, but thereafter to be raised by Pettis and Moss upon their land, the agreement was, in my opinion, a mere executory contract, for which Pettis and Moss m'ght be liable in damages, but could not, so long as they or the defendant claiming under them were in possession, operate to put the title to the crop subsequently raised by them in the plaintiffs.

I concur in the reversal of the judgment, but think the complaint should be dismissed.