WISCONSIN VALLEY TRUST COMPANY, Trustee, Respondent, vs. HOTEL WAUSAU COMPANY and others, Defendants: CHRIS. SCHROEDER & SON COMPANY and others, Trustees, Appellants.

*November 8, 1933—February 6, 1934.*

76

For the appellants Chris. Schroeder & Son Company and Gustav Krueger, trustees, there was a brief by *Fish, Mar-*

*shutz & Hoffman,* attorneys, and *I. A. Fish* and *W. H. Voss* of counsel, all of Milwaukee, and oral argument by *Mr. Fish* and *Mr. Voss.*

For the respondent there was a brief by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *Claire B. Bird.*

The following opinions were filed December 5, 1933:

FOWLER, J. The only question for determination is the priority of the rights to the personal property described in the mortgages by reason of the possessory acts first taken by the second mortgagee.

The position of respondent is that under the rule of *Chynoweth v. Tenney,* 10 Wis. 341, *397, the mortgages did not create a lien on after-acquired personalty, but only constituted a license to the mortgagees to take possession of the property, which continued until revoked by the mortgagor; that until possession was taken by a mortgagee no lien was acquired; that by the acts of the second mortgagee it took possession of the personal property covered by the mortgages and thereby acquired a lien which was the only lien thereon, and that this lien was not affected by the subsequent acts of the trustees under the first mortgage, because the second mortgagee's possession terminated the possession of the mortgagor and under their license the first mortgagees could only take possession from the mortgagor.

The position of the appellants among others taken is that conceding that the rule of the *Chynoweth Case, supra,* makes void a mortgage of after-acquired personal property, the second mortgagee, having accepted a mortgage by its terms expressly subject to the first mortgage, is estopped from asserting invalidity of that mortgage.

The position of the appellants seems to us well taken. They fortify it by citing the rule of *Baierl v. Riesenecker,* 201 Wis. 454, 227 N. W. 9, 230 N. W. 605, wherein it was

held in effect that where one takes a bill of sale expressly subject to a chattel mortgage which is not filed, without which under our filing statute it would be void as to a subsequent purchaser even though the purchaser had notice of its existence, the purchaser under the bill of sale takes subject to the chattel mortgage because he is estopped from the recital in the bill of sale from attacking the validity of the mortgage. All he acquires by such a bill of sale is the equity in the chattels after satisfaction of the first mortgage.

The situation here is analogous and the same reasoning that was held to estop the purchaser under the bill of sale applies to estop the second mortgagee from asserting rights superior to those of the first mortgagees. All that the second mortgagee acquired was the equity remaining after satisfaction of the first mortgage.

Respondent's counsel contend that the *Baierl Case, supra,* holds that the mere recital in a bill of sale of the existence of a chattel mortgage did not estop the purchaser from attacking the validity of the mortgage. There is a statement in the opinion to that effect. But in the second mortgage here involved there was more than a mere recital of the existence of the first mortgage as is below indicated. Counsel further claim that the basis of the ruling in the *Baierl Case* was the fact that the amount of the chattel mortgage debt was deducted from the agreed purchase price of the property, and it is true that such deduction was made. But the reason that the deduction operated as an estoppel is that it made the purchase *subject to the mortgage,* and gave the purchaser only the equity of redemption. An express recital that the purchase was so subject manifestly would have the same effect. The opinion in the *Baierl Case* cites in support of its ruling cases holding that a grantee is estopped from denying the validity of a mortgage to which his deed recites that the conveyance to him is subject. The opinion states, page 460, "that the basis of estoppel, whether

the mortgage is assumed *or the property purchased subject to it,* is found in the fact that the purchaser has recognized the mortgage as a valid obligation." The recognition of the valid obligation in the *Baierl Case* resulted from the deduction of the mortgage debt from the purchase price of the property, but an express recital that the purchase was subject to the mortgage would have had the same effect as the deduction of the purchase price was held to have had. Where there is such a recital it is presumed that there was such a deduction. It is clearly pointed out in the opinion in the *Baierl Case,* that what one gets when he purchases subject to chattel mortgage void because not filed is what is left after the mortgage is satisfied, or the right to satisfy the mortgage to which the conveyance is subject and then take the property. By the same token all that a second mortgagee under a mortgage void because on after-acquired personalty gets is the right to subject the property mortgaged to the satisfaction of his debt after the first mortgage is satisfied by payment of the debt either by himself or the mortgagor. In the instant case we have in the second mortgage more than a mere recital of an existing mortgage. We have a recital in the second mortgage that the second mortgage is "subject, however, to the first deed of trust;" and a covenant to defend the title to the property except as against the first trust deed. There is also a covenant in the first mortgage that the mortgagor would "not hereafter create or suffer to be created any debt or *charge* which would be prior to the lien . . . (of the first mortgage) upon any property which now is or which shall hereafter become subject to the lien" of the first mortgage. From all which it appears that the intention of the parties to the mortgages was that the security of the second mortgagee was and was to be kept inferior to that of the first mortgagees, and its interest and rights in the property described in the mortgage were and were to be kept subject to the interests of the first

mortgagees therein. As stated at the close of the opinion in the *Baierl Case:*

"The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced."

The doctrine is a doctrine of equity. The respondent is appealing to equity in support of its claim. It would be inequitable to permit it to secure rights superior to those of the first mortgagees when it is apparent from the recitals of the second mortgage and the bonds it secures and the covenant of the first mortgage above mentioned that the rights conferred by the second mortgage were understood by all parties to be subject in all respects to the rights conferred by the first mortgage.

The appellants fortify their position further by citing the rule of the Massachusetts court in *Federal Trust Co. v. Bristol St. R. Co.* 222 Mass. 35, 109 N. E. 880, wherein it was held, notwithstanding the rule which obtains in Massachusetts that a mortgage of after-acquired personal property does not create a lien thereon, that when street cars acquired after the execution of a mortgage were sold pursuant to a decree of court reciting that they were sold subject to the mortgage, the purchaser was estopped from claiming the mortgage did not create a lien on the property purchased. This ruling was made on the express assumption that the cars were personal property included in a mortgage describing particularly described real estate and after-acquired real and personal property.

It is pointed out in *Federal Trust Co. v. Bristol St. R. Co.* 218 Mass. 367, 105 N. E. 1064, that there is no distinction between purchasing under a decree subject to a mortgage and purchasing by conveyance so subject. By the same token there is no distinction between taking a second mortgage expressly subject to a first mortgage, and purchasing by a

bill of sale expressly so subject. The same reason that estops one who has purchased expressly subject to a mortgage from attacking the lien ostensibly created by that mortgage, estops a second mortgagee from attacking the lien of a first mortgage when his second mortgage expressly recites that it is subject to the first mortgage. As one who purchases personal property by bill of sale reciting that the property is subject to an unfiled chattel mortgage acquires only the equity remaining after satisfaction of the mortgage, so a second mortgagee of after-acquired personalty whose mortgage recites that it is subject to the first mortgage only acquires the right to subject the mortgaged property to his debt after the first mortgage has been satisfied.

The appellants attack the rule of the *Chynoweth Case, supra,* and urge that it should not be continued as the law of the state because contrary to reason and overwhelming weight of authority and expressly based upon decisions some of which are overruled by the courts that rendered them. But we do not see that there is occasion for reconsideration of that rule in the instant case.

We are not unmindful of the contention of the respondent that the second mortgagee acquired a lien on the property by its possessory acts and that the first mortgagees did not and could not acquire a lien by possessory acts after the second mortgagee's lien had attached. But we are not concerned with liens only. We are concerned with equitable rights. The second mortgagee has only such rights as equity gives it. By its own claim its mortgage of after-acquired personalty was void at law and it could only acquire rights under its mortgage by application of and action upon the equitable principle that the mortgage constituted a license to take possession which continued until revoked. And it is not only relying upon an equitable principle, but it is proceeding in an equitable action. Where does this leave it? The mortgagor in effect covenanted in the first mortgage

that it would not suffer any charge to be created either knowingly or unwittingly superior to the rights of the first mortgagees. In this situation it was the duty of the mortgagor, when the second mortgagee demanded possession, to revoke the license to take possession and refuse to deliver the property. The second mortgagee is in equity. Will a court of equity permit it to benefit to the harm of the first mortgagees through the wrong of the mortgagor? Suppose the mortgages were of existing chattels. Such mortgages are invalid except between parties. The two mortgages were acknowledged before the same notary at the same time and were inferentially executed at the same time. One is by its terms expressly made subject to the other. Would a court of equity adjudge the second mortgagee a lien superior to that of the first mortgagees because it had a faster automobile than the first mortgagees and beat them in a race to the filing office? A court of equity would not so stultify itself. A court of equity would say to the second mortgagee, chattel mortgages though not recorded are good between the parties. By accepting a chattel mortgage expressly subject to another chattel mortgage you became a party to that mortgage and are in equity bound to respect its terms as is the mortgagor. The parties to both mortgages intended and understood that the first mortgage should create a lien superior to that of the second mortgage and it will be given effect accordingly. You are estopped from asserting to the contrary. So here. By accepting a mortgage on after-acquired personalty that by its terms was expressly subject to a first mortgage, the second mortgagee impliedly became a party to that mortgage, and can no more secure rights superior to the rights of the first mortgagees than could the mortgagor by his conduct afterwards grant or give permission to secure such rights. The mortgagor was under obligation under its covenant to keep the lien of the second mortgage subject to that of the first and by the word "lien"

the parties meant rights. That covenant bound it not to surrender possession of the property to the second mortgagee. On demand of possession the mortgagor was obligated then and there to revoke the second mortgagee's license to take possession and create a lien if such possession would operate to prevent the first mortgagees from acquiring a lien. The second mortgagee could secure a lien, under its theory, only by collusion with the mortgagor or through the mortgagor's violation of its obligation under the first mortgage, and equity will not enforce a claim of right based upon collusion or wrongful conduct.

Nor are we unmindful of the claim of respondent that the possession of a mortgagee of after-acquired personal property cannot be taken away from him by a creditor and that the first mortgagee is a creditor. That possession may not be taken from him by a general creditor on a writ of attachment or execution is true. But he has not agreed with the general creditor that the latter's rights to possession are superior to his, and he has agreed, by taking a mortgage expressly subject to a first mortgage, that the first mortgagee's rights are superior to his. By so taking his mortgage he has agreed that his security is the equity of redemption. He has agreed that his right to possession of the property as security is to take it subject to the first mortgagee's right to take it, or to take what is left after the first mortgagee has satisfied his claim. While the agreement was not made with the first mortgagee direct, the first mortgagee has the same right to enforce that agreement in protection of his rights, that a mortgagee has to enforce the agreement of a grantee of a mortgagor to pay the mortgage debt. The second mortgagee is a party to the first mortgage in the same way and in the same sense that the grantee is a party to it. That such a grantee is a party to it was held in the case of *Palmeter v. Carey,* 63 Wis. 426, 21 N. W. 793, 23 N. W. 586, which first ruled that a judgment for a

deficiency could go against such a grantee in an action to foreclose the mortgage under the statute providing that a judgment for deficiency could be entered against any party to the same contract the mortgage secures. Sec. 278.04, Stats. If a grantee assuming a mortgage debt is a party to the mortgage note, with greater reason is he a party to the mortgage. And with equal reason is a second mortgagee in a mortgage expressly subject to a first mortgage a party to the first mortgage.

Other grounds for reversal are urged by appellants, but as the above rules the only proposition involved in their favor there is no need to consider them.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment in accordance with this opinion.

ROSENBERRY, C. J. (*dissenting*). I am obliged to dissent from the reasoning of the opinion filed by the court in this case. As I view it, the question in this case is, "Did the first mortgagee have a right, under and by virtue of the license created by its mortgage, to oust the lien which was acquired when the second mortgagee took possession of the property in question under its license created by the second mortgage?"

A discussion as to the relative rights of first and second mortgagees is in my view beside the point. All that is said in that regard may be conceded. In this case neither party had a mortgage upon the property in question; each had a license which if unrevoked might by a proper procedure ripen into a lien. When the property was taken from the possession of the mortgagor under and by virtue of the license created by the second mortgage, the license created by the first mortgage did not thereby become void, it merely became ineffective because the mortgagor then had no property subject to seizure under the license created by the first mortgage. To treat the matter as if the first and second mort-

gages each created first and second liens is, it seems to me, entirely to overlook the proposition urged here in support of the plaintiff's right. Such equitable rights as either of the parties had, they had under and by virtue of the contract entered into between the mortgagor and the first and second mortgagees.

In my opinion the judgment should be affirmed.

I am authorized to state that Mr. Justice FRITZ concurs in this dissent.

A motion for a rehearing was denied, with $25 costs, on February 6, 1934.