Kohler Improvement Company, Appellant, vs. Preder and wife, Respondents.

*March 4—April 2, 1935.*

*Lucius P. Chase* and *Lyman C. Conger,* both of Kohler, for the appellant.

For the respondents there was a brief by *Buchen & Federer* of Sheboygan, and oral argument by *J. F. Federer*.

MARTIN, J.  On or about April 1, 1929, the defendant, Garret Preder, negotiated with plaintiff for a lease of the premises known as the Lorenz farm, consisting of one hundred and sixteen acres, located in the town of Wilson in Sheboygan county.  Preliminary to the lease, and on March 26, 1929, the defendants, who are husband and wife, purchased from plaintiff a one-half interest in certain live stock, hay, grain, and feed, and a full interest in certain horses, live stock, and other personal property for the sum of $1,786.90, and as security for the payment of the purchase-price thereof executed and delivered to the plaintiff a note secured by a chattel mortgage on all of said property, which mortgage also included such crops as might from and after the date of said mortgage be grown on the premises, being the farm above mentioned.

The lease was for a term of one year commencing April 1, 1929, for the purpose of farming.  Among other provisions, the lease provided that it "shall be automatically renewed from year to year, but may be terminated at any time by mutual consent, by failure of either party to keep the covenants of this agreement, or upon six months' written notice from either party."  The farm was to be operated on shares in accord with the terms of the lease.  In general, each bearing one-half the expense; each to receive one-half of the increase and receipts from the sale of crops and live stock, except cattle furnished by lessor.  It was further provided that each party agreed to purchase a one-half interest in as much of the live stock, feed, seed, fertilizer, or lime belonging to the other party at the beginning of the lease as was mutually agreed should be used on the farm.  The lease further provided that the amount owed to either party by the other should be set off against each other and the difference paid in cash; provided that, if the difference is owed by

the lessee, he may give the lessor his note for the same, payable in —— months with interest at six per cent, in the event of the termination of the lease before the maturity of said note, same to become due immediately, the debt constituting a prior lien on the lessee's share of live stock, feed, and other supplies on the farm.

It appears that on or about March 26, 1931, as a renewal of the note and mortgage of March 26, 1929, a new note and chattel mortgage in the sum of $1,691.31 was given, which mortgage likewise included crops thereafter to be raised on said farm, and again on March 26, 1933, in renewal of said note and mortgage of March 26, 1931, defendants executed two certain promissory notes and a chattel mortgage, one note in the sum of $500, payable on or before three years, the other note in the sum of $1,181.31, payable on or before three years. The chattel mortgage of March 26, 1933, is of usual form. In addition to covering all of the personal property which the defendants had purchased outright from the plaintiff and that in which defendants had a one-half interest, it contains the following: "Together with the crops of all kinds growing on the farm and premises hereinafter mentioned and which may hereafter be raised thereon, until the indebtedness and note secured thereby are fully paid."

On March 28, 1933, the parties entered into a new lease which contained the following clause:

"Lien on property of lessee for amount due lessor: In consideration of this lease the lessee covenants and agrees to pay the rent and keep and perform the agreements herein provided, hereby covenanting that all said rents and moneys due from him to said lessor for damages or otherwise shall be and hereby are declared and made a perpetual lien on any and all crops, stock and other personal property of the lessee at any time kept, had or used on said premises whether the same are exempt from execution or not, such lien to attach from the commencement of the term of this lease."

On April 6, 1933, plaintiff served notice upon the defendant, Garret Preder, terminating said lease as of October 31,

1933. Under date of October 24, 1933, the defendant, Garret Preder, gave written notice to the plaintiff, among other provisions in said notice, of the following:

"That I cancel and withdraw my signature from the above mentioned chattel mortgage as to that portion of the above provision covering the crops 'which may hereafter be raised thereon,' and I decline to recognize any right, title or interest of the Kohler Improvement Company in and to my one-half interest in those crops which were planted and raised by myself subsequent to the execution of the above chattel mortgage . . . and I hereby revoke any license of the Kohler Improvement Company, if any, by virtue of said chattel mortgage, to take possession of the above mentioned crops."

The case was tried to the court on a stipulation of facts. The court found that there was due to the plaintiff, in all, the sum of $1,885.57. The judgment provides:

"That for said sum of $1,885.57, and the costs and expenses of the sale, hereinafter ordered, which may be incurred, the plaintiff has a lien on the following described personal property:" [Enumerating all the personal property described in the chattel mortgage of March 26, 1933.]

It was further adjudged:

"That said plaintiff has no lien for the payment of said money on the one-half interest of the defendant, Garret Preder, in the *hay, oats and ensilage produced on the Lorenz farm by the defendant, subsequent to March 26, 1933,* being the following amounts, to-wit: 16.86 tons of hay; 255.3 bushels of oats; 48 tons of ensilage; and said property is hereby awarded to the defendant, Garret Preder."

The judgment further provides that, unless defendants redeem said property by paying the amount of the judgment, with interest and costs, that said property which is subject to the lien be sold at public auction by the sheriff of Sheboygan county, and that upon the confirmation of the report of such sale plaintiff may apply for an order that execution issue against the defendants for any deficiency.

The trial court found that all money due to the plaintiff from the defendants, or either of them, either under the

lease of April 1, 1929, or either of the chattel mortgages of March 26, 1929, and March 26, 1931, is included in the notes and mortgage of March 26, 1933, and that the rights of the plaintiff against defendants must be determined under the chattel mortgage of March 26, 1933, and the lease of March 28, 1933.

Among other conclusions of law, the trial court found:

"That plaintiff has no lien under its chattel mortgage of March 26, 1933, on said hay, oats and ensilage so produced on said demised premises subsequent to March 26, 1933, and belonging to the defendant, Garret Preder, for the reason that said notice of October 24, 1933, served by the defendant, Garret Preder, on the plaintiff, revoked all license that plaintiff had to take possession of said property under said chattel mortgage of March 26, 1933."

The issue here is whether the plaintiff has a lien as security for the payment of the money due it, on the hay, oats, and ensilage raised and produced on the premises in question by the defendant, Garret Preder, after March 28, 1933, either under the chattel mortgage of March 26, 1933, or the lease of March 28, 1933, or, if not under said chattel mortgage or lease, then whether such lien exists under the prior chattel mortgages or prior lease. It is apparent that the two notes of March 26, 1933, and the chattel mortgage executed by defendants on the same date to secure said notes constituted a settlement of accounts between the parties as of that date. When plaintiff gave notice to terminate the lease, said notice specifically mentioned the lease of March 28, 1933, and this action was brought to foreclose on the chattel mortgage executed on March 26, 1933, so the rights of the parties must be determined upon said respective instruments.

This court has consistently held to the rule that a chattel mortgage can operate only upon property in actual existence at the time of its execution. This rule was announced in *Comstock v. Scales,* 7 Wis. 138, *159. This case involved a chattel mortgage executed by a lessee upon a crop of grain

consisting of oats, wheat, and corn; the mortgage being executed at or about the time the seed was planted and before the same was up, or presented the appearance of growing grain. The court said:

"In our opinion a chattel mortgage can only operate upon property in actual existence at the time of execution, and cannot be given, as was attempted to be done in this case, upon a crop before it can be said to be in existence. Since the subject matter of a chattel mortgage was not *in esse* at the time the mortgage was executed, there was nothing for it to operate upon."

This rule has been followed in *Chynoweth v. Tenney,* 10 Wis. 341, \*397; *Farmers' Loan & Trust Co. v. Commercial Bank,* 11 Wis. \*207; *Single v. Phelps,* 20 Wis. \*398; *Mowry v. White,* 21 Wis. \*417; *Hunter v. Bosworth,* 43 Wis. 583; *Weisel v. Spence,* 59 Wis. 301, 18 N. W. 165; *First National Bank v. Knowles,* 67 Wis. 373, 28 N. W. 225; *O'Niel v. Wm. B. H. Kerr Co.* 124 Wis. 234, 102 N. W. 573; *Wisconsin V. T. Co. v. Schroeder & Son Co.* 214 Wis. 73, 251 N. W. 218.

Plaintiff's counsel recognizes the rule as applicable in Wisconsin under our decisions, but contends that the doctrine is contrary to the weight of modern authority and unsuited to modern conditions. He urges that the rule should be abandoned in this state, and further contends that it is in conflict with express provisions of our statutes, sec. 121.05, which provide:

"(1) The goods which form the subject of a contract to sell may be either existing goods, owned or possessed by the seller, or goods to be manufactured or acquired by the seller after the making of the contract to sell, in this act called 'future goods.'

"(2) There may be a contract to sell goods, the acquisition of which by the seller depends upon a contingency which may or may not happen.

"(3) Where the parties purport to effect a present sale of future goods, the agreement operates as a contract to sell the goods."

The statutes to which counsel refers, being a part of the Uniform Sales Act, ch. 121; Stats., have no application to the law of chattel mortgages. The Uniform Sales Act, sub. (3), sec. 121.05, provides:

"Where the parties purport to effect a present sale of future goods, the agreement operates as a contract to sell the goods."

The buyer acquires no title in the goods either at the time of the contract or thereafter. The seller may refuse to deliver the goods when he acquires them. The buyer cannot recover the goods or enforce the contract in equity. He simply has his action at law for damages for breach of contract.

In 23 R. C. L. pp. 1249, 1250, § 67, the rule is stated thus:

"While there can be no sale of an article which is not in existence actually or potentially a person may legally enter into an executory contract to sell such article in the future, when it comes into existence; . . . . The Uniform Sales of Goods Act adopted in a number of jurisdictions provides that goods which form the subject of a contract to sell may be either existing goods owned or possessed by the seller or goods to be manufactured or acquired by the seller after the making of the contract to sell. . . . When the sale is executory if the seller refuses to deliver at the appointed time it is very clear the buyer can maintain neither trespass nor trover for the property contracted to be delivered, though the seller may then have it in his possession, and afterward sell it to some one else. Not having actual possession, nor any legal title conferring the right of immediate possession, he can maintain neither of these actions. His remedy is by an action on the contract itself, for a breach in refusing to deliver according to its terms."

In either a sale or a chattel mortgage of future goods the grantee acquires no title, and if grantor refuses to deliver the goods when the same come into existence, the grantee cannot enforce the same in equity. To hold that in the case

of a contract to sell future goods one cannot have specific performance if the grantor refuses to deliver, and in a case of a mortgage thereof to say the mortgagee may have specific performance would not be consistent. If the mortgagee is entitled to a lien on the crops as they come into existence, so is the buyer under an executory contract to sell. The distinguishing feature between the two is that under the executory contract to sell, grantee may have a cause of action for damages for breach of contract, while in the case of a chattel mortgage the clause covering after-acquired property is a mere license, revokable at the will of the mortgagor, uncoupled with any interest.

Plaintiff contends that a contract between landlord and tenant, relating to title to crops to be raised upon the demised premises, is not within the doctrine that future goods may not be mortgaged, and our attention is called to *Layng v. Stout,* 155 Wis. 553, 145 N. W. 227, and *Rowlands v. Voechting,* 115 Wis. 352, 91 N. W. 990. These cases do not sustain counsel's contention.

In *Layng v. Stout, supra,* there was a stipulation in the lease that title to the crops raised during each year on the leased premises shall vest in the lessor until such time as the rent shall have been paid. In *Rowlands v. Voechting, supra,* the court held that the contract of lease had not reserved title to the crops in the landlord, and therefore he was entitled to no lien thereon and was guilty of conversion for seizing the crops.

There is a very clear distinction between the so-called landlord and tenant cases in which there is a reservation of the title in the lessor for the purpose of securing rent to become due under the lease, and the line of cases involving the validity of chattel mortgages upon crops not in actual existence. In the instant case, plaintiff has no rent due under the lease of March 28, 1933, and all moneys due plaintiff are covered by the chattel mortgage of March 26, 1933. The issue in

the instant case is not one of landlord and tenant. The relationship is that of buyer and seller, and mortgagor and mortgagee. Plaintiff sold the defendants certain personal property. On March 26, 1933, the defendants owed plaintiff a certain sum of money for which they gave plaintiff the two promissory notes now reduced to judgment. The chattel mortgage foreclosed was given to secure the payment of the two notes in question. The trial court denied plaintiff a lien on the one-half interest of the defendant, Garret Preder, in the hay, oats, and ensilage produced subsequent to March 26, 1933, finding the quantities to be sixteen and eighty-six hundredths tons of hay; two hundred fifty-five and three-tenths bushels of oats; and forty-eight tons of ensilage.

The chattel mortgage is a valid lien on the defendant's one-half interest in the hay crop of 1933. The trial court found that said hay crop was raised from seed planted in the year 1932. This seed would have germinated during the summer or fall season of 1932. It may have produced a crop in the year 1932 and reproduced the crop of 1933. Under the decisions of this court in *Simanek v. Nemetz,* 120 Wis. 42, 48, 97 N. W. 508, and in *Funk v. Paul,* 64 Wis. 35, 24 N. W. 419, the hay crop of 1933 would be subject to the lien of the plaintiff's chattel mortgage of March 26, 1933. In that respect the judgment will be modified, and affirmed in all other respects.

*By the Court.*—Judgment modified so as to give plaintiff a lien on the one-half interest of the defendant, Garret Preder, in the sixteen and eighty-six hundredths tons of hay, and affirmed in all other respects, the appellant to have costs on this appeal.