CASH CROPS CO-OPERATIVE, Respondent, vs. GREEN GIANT COMPANY, Appellant.

*February 5—March 3, 1953.*

354

356

For the appellant there were briefs by *Lueck, Skupniewitz & Lueck* of Beaver Dam, and *Thompson, Hessian, Fletcher & McKasy* of Minneapolis, Minnesota, and oral argument by *John J. McKasy* and *Arthur W. Lueck.*

For the respondent there was a brief by *Ela, Christianson & Ela* of Madison, and oral argument by *Walter P. Ela.*

BROWN, J. By sec. 185.08 (5), Stats., a person (or corporation) who purchases products from a member of a co-operative association is bound by the member's assignment of funds to the association, if certain formalities concerning filing of the assignment and notice to the purchaser are complied with. It is admitted in the present case that the company had notice of the duly filed agreement between the co-operative and the grower of peas, but the statute has no application unless the grower is a seller of the peas and the appellant company a purchaser. It was the view of the learned trial court that regardless of the attempted reservation of title in the contract between the company and the grower, title to the peas was in the grower and was later acquired by the company through purchase and sale. The seed peas were originally the property of the company. It is not contended that the company sold them to the grower nor did it make him a gift of them. By its contract the company professed and intended to retain ownership of the seed and of the new crop into which the seed was transformed by the process of growth. If this ownership was satisfactory to the contracting parties we see no reason why they may not so agree and have their agreement effective in the absence of some statutory prohibition. We have found no statute, and have not been referred to any, which says that parties may not make a valid agreement that one of them may contribute seed and the other land and labor and that title to the seed and the crop which grows from it shall be retained by the former. None of our previous decisions holds

that such an agreement for the retention of title is invalid. Two of them expressly recognize the validity and effectiveness of such a reservation. *Lanyon v. Woodward* (1882), 55 Wis. 652, 13 N. W. 863, and *Romey v. Rock County Sugar Co.* (1915), 159 Wis. 552, 150 N. W. 981.

Since title to the peas from seed to harvested crop was reserved in the company they could not be sold to the company by the grower and their delivery and the compensation for growing them was unaffected by the contract of the cooperative with its members or by sec. 185.08 (5), Stats., both of which are limited by their own terms to transactions involving a purchase by the company and a sale by the member.

Disregarding the parties' agreement concerning ownership of the growing crop, the learned trial court attempted to discover where title is by an analysis of various contract provisions. One on which it lays stress is that the grower's compensation is calculated on the amount of peas delivered fit for canning. The court said that this was an agreement to pay for a commodity and therefore a purchase. We do not follow the reasoning. If the owner of a berry patch agrees to pay berrypickers a fixed sum for each quart they pick we do not concede that the pickers have become the owners of the fruit and the owner of the field is buying it from them, though he is paying for a commodity to the same extent as here. It is more accurate to say that the compensation is measured by the quantity of the commodity delivered and the method of calculation does not determine the ownership. The trial court also stressed the element of risk of loss saying that the contract throws it entirely on the producer. As a usual thing, in the absence of contract to the contrary, the risk of loss does fall upon an owner and if ownership is in dispute the court may be aided in determining ownership by evidence of where the loss may fall. In the absence of contract concerning it the risk follows ownership; it does not

determine ownership. The present contract designates the owner and as to risk of loss it merely provides that the grower does not get paid for peas which are not grown and delivered in fit condition for canning. As to such peas the grower, of course, has lost his cost of production, but the contract does not require him to bear any other loss. The company has lost its investment in seed and the expected value of its harvested crop. It has no redress against the farmer for failure to deliver due to crop failure. In the first days after planting the company's investment is proportionately large; as the grower's contribution in husbandry becomes larger with the passage of time he stands to lose more, but, surely if the crop is destroyed, the company sustains a loss, too. So we say that the risk of loss is not solely on the grower, as the trial court thought, and if it were it would not shift to him an ownership which by contract he had placed in the company.

It is also submitted that the company's right to reject unsuitable peas without paying for them establishes ownership in the farmer rather than in the company. The contract provides that if peas are unfit the farmer may either plow them under or use them for feed, nothing else. As a usual thing if an owner offers peas which are not taken or paid for, he would seem to have the right to do what he pleases with them. The contract provisions seem equally, if not more, inconsistent with the grower's ownership than with that of the company. We do not think these provisions contravene the state of the title as specified in the contract.

The respondent and the trial court also cite numerous statutes to the effect that title, in so far as the rights of third parties are involved, is deemed to be in the party in possession of the property unless the liens or other claims against it are filed as public records. Each statute deals with specific transactions, among which the one before us does not appear. This is conceded, but it is submitted that such statutes show

a public policy against "hidden titles." It is not our function to anticipate legislation and add transactions such as this with which the legislature has not seen fit to deal to the list of those with which it has. The trial court's decision also cites the legal impossibility of mortgaging a crop before it is planted. *Kohler Improvement Co. v. Preder* (1935), 217 Wis. 641, 259 N. W. 833. In *Lanyon v. Woodward, supra,* we said that there was no conflict between such a prohibition and the valid reservation of title in the person furnishing seed to the crop into which that seed was transformed.

We are unable to agree with the learned trial court that when the parties have expressly stipulated that a crop shall belong to the one from whose seed it is grown, nevertheless in fact it belongs to the one in whose land it is planted and that the parties have a contract of executory sale which they did not intend to make. Nor can we agree that even if the grower did not have title and thus could not sell the crop to the company, it was "essentially" a sale and as such is governed by sec. 185.08 (5), Stats. That section deals with sales only. Unless there is a sale it cannot apply. There was no sale here.

We are compelled to reverse the judgment.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment dismissing the complaint.

BROADFOOT, J. dissents.
FAIRCHILD, J., took no part.